ON APPLICATION FOR REHEARING
This court's original opinion dated December 20, 1991, is withdrawn, and the following is substituted therefor:
The Madison County Department of Human Resources (department) filed petitions to terminate the parental rights of L.W. (mother) and W.B.S. (father) to their daughters, C.W., B.A.W., and L.W. (daughters). After an ore tenus proceeding, the referee of the juvenile court made a number of specific findings and recommended that the parental rights of the mother and the father be terminated and that permanent legal custody be placed with the department, with the authority to proceed with plans for adoptive placement.
The mother requested a hearing before the trial court, which was granted for the purpose of "admitting new evidence, if there be any, as to the precise plan of the Madison County and State of Alabama Departments of Human Resources for the care and placement of the . . . children, and any evidence which the parties have to offer as to the prospects for the adoptive placement of said children, and the method by which the State of Alabama Department of Human Resources would seek to secure such adoptions."
The trial court considered the record of the proceedings before the referee and heard evidence concerning adoption pursuant to the above-referenced order. After stating that it was not "convinced from clear and convincing evidence that the best interests of said children will be served by terminating the parental rights of their parents," the trial court denied the department's petitions and ordered the department and the mother and father, through their attorneys, to present a plan within twenty-one days to the trial court for the *Page 705 
return of the daughters to their parents. In addition, the department was ordered to "provide necessary available services to [the mother and the father] and said children for the purpose of assisting them in establishing themselves as a family unit."
The department appeals, contending that the trial court abused its discretion by denying the department's petitions and ordering that the daughters be returned to their parents' physical custody when, it claims, such a decision was not in the daughters' best interests and was against the great weight of the evidence presented. We disagree and affirm.
At the outset we note that the trial court is to accept the master's or referee's findings unless they are clearly erroneous, and to the extent that the trial court adopts the findings of the master or referee, the same standard applies in appellate review. Rule 53(e)(2), Alabama Rules of Civil Procedure; Hall v. Mazzone, 540 So.2d 1353 (Ala. 1988); BurgessMining Construction Corp. v. Lees, 440 So.2d 321 (Ala. 1983). In the present case the trial court did not adopt the findings of the referee; therefore, there is no presumption with regard to the referee's findings. In addition, the trial court did not hear the testimony presented to the referee, but only heard testimony regarding the prospects for adoption of the daughters and the method used for placement. Therefore, because the trial court did not hear the testimony and observe the witnesses regarding the reasons for requesting termination of parental rights, we find that the ore tenus presumption does not apply.
Furthermore, in child custody cases the overriding consideration is the best interests of the child. Brown v.Alabama Department of Pensions Security, 473 So.2d 533
(Ala.Civ.App. 1985). The termination of parental rights requires clear and convincing evidence that termination would be in the child's best interests. Muffoletto v. State Department of HumanResources, 537 So.2d 939 (Ala.Civ.App. 1988); Brown,473 So.2d 533. In addition, where termination is sought by a non-parent, a two-prong test must be applied. Ex parte Beasley,564 So.2d 950 (Ala. 1990). The trial court first must find the child to be dependent and then determine that all viable alternatives to termination have been considered and rejected.Id.; Muffoletto, 537 So.2d 939.
The evidence indicates that the daughters were three, four, and eight years old at the time of the first hearing in December 1990. The mother has six other children. Only the three that are the subject of this matter are also children of the father.
Jackie Cobb, a department representative who worked in protective child services, was assigned to work with the mother from 1983 to 1987. She testified that the department has provided services for the mother for some twenty years and that in 1983 the department was providing homemaker services, including transportation, aid to dependent children, and food stamps to her. A neglect report was received, and during the time that it was being investigated, the house was set on fire by the mother's children, who were left unsupervised. That same night the mother gave birth to B.A.W. The mother's children subsequently were taken into custody by the department.
In 1985 C.W. was returned to the mother, and in 1986 three other children were returned to the mother. Her three oldest children remained in foster care. The mother again was provided services, such as baby care and mental health services. The representative maintained constant contact with the mother, checking on the food supply, because the mother continued to have problems keeping adequate food in the house. The mother was evicted from a house during this time. Keeping adequate housing and utilities was a continuous problem.
Although intensive resources were provided to the family, problems continued, including the failure of the children to attend school, the lack of food, the utilities being turned off, problems with obtaining and keeping clothing, and problems getting the father to provide support. Twice the *Page 706 
mother was terminated from vocational rehabilitation for failure to attend. The family lived in at least four different places during this time, including the Rescue Mission and the grandmother's house. In addition, the representative observed the father when he had passed out, apparently from drinking alcohol, while supposedly supervising the children. She spoke to the father about other incidents and his problems with drinking.
Another department representative, Kimberly Crutcher, began working with the family in 1988. She testified that the same family problems have continued, namely, the lack of stable housing, the lack of an adequate food supply, the denial of aid to dependent children and food stamps because of the mother's failure to be reviewed by the department, the failure to get the children's "medicals" up to date, the lack of regular school attendance, and the need of referrals for clothing and household supplies.
The mother has only recently begun to visit regularly with the daughters. Prior to that time she had missed as much as six weeks at a time. The mother has paid no child support, and the father has paid $50 a month pursuant to a court order. The father has lived with the family off and on for the last six years and has moved out three times. The mother and the father have lived together again since May 1990 with four of the mother's other children. (Other testimony indicates that the mother's six other children were living in the household at that time.) The father works, and the mother receives a total of $1,075 a month in various payments. The mother lived in eight different residences from 1988 to 1990. During this time the children were left unsupervised several times, and the mother could not be found. In 1988 another house fire occurred when the children were upstairs playing with matches. The daughters were removed from the home in 1989.
Ms. Crutcher provided the mother with homemaker services, transportation, and alarm clocks to help the children get to school. She also accompanied the mother to juvenile detention hearings, to the "city program," and to "delta programs" for reviews regarding the other children. She made referrals for food, housing, utilities, and clothing, as well as transportation, counseling and "psychologicals" for some of the older children, and medical appointments. The mother was also referred to parenting classes, which she did not attend. However, she has recently attended a parenting class. Many times the mother could not be located so that the representative could provide transportation services for the children's medical appointments. This case has the highest level of intensity as far as services and time of any case of which the representative was aware. With the increase of visitation and the recent attendance at parenting classes, there has been some improvement.
Other testimony revealed that C.W. was diagnosed in June 1989, immediately after the child was removed from the care of the mother, as having gonorrhea of the throat, rectum, and vagina. She was seven years old. On examination, L.W., who was three years of age, was found to have vaginal tears. The mother at first refused to have the other children tested for venereal disease, but eventually relented. She never agreed to be tested.
A juvenile probation officer testified that he had supervised two of the mother's oldest sons and that one has been to the Department of Youth Services; the other has been certified as an adult. The mother did not attend any of their hearings.
A licensed professional counselor evaluated the mother in 1985. He testified that the mother tested in the mild mental retardation category and performs at a third grade level. She encounters some difficulty in managing day-to-day functions as far as her own needs, and it is very difficult for her to take care of the children's needs. Recent testing revealed no change.
The mother testified that she has received assistance from the department since 1970 or 1971. The department wanted her to have stable housing and income, to properly supervise the children, to control her drinking, and to manage money *Page 707 
better. She has improved and now pays the rent and utilities and keeps food in the house, to "get my kids back." She receives help from the father and from her twenty-year-old daughter. She and the father want to get a larger house so there would be room for the daughters, in addition to her other children, because eight people were living in a three-bedroom house. She would like two of the oldest children to get jobs and help with expenses. She has a problem with transportation and now understands that school is important and says she would make the children attend classes. She started attending parenting classes after the petitions were filed.
The father testified that he has had the same job for three years. He earns $130 to $150 a week and wants to borrow money from his boss to buy a car. He now wants to be together as a family and feels that the problems have been worked out. He also testified that the mother has no control over her older children.
The mother's twenty-year-old daughter testified that she lived in foster care, but now lives with her mother. Although she hopes to go back to college and does not plan to be in the home "forever," she is helping the mother with budgets, menus, meal preparation, chores, and homework for the other children. The daughter stated that the father pays utilities, the mother pays rent, and they buy household items together. She believes that the mother could care for the daughters without her.
At the hearing before the trial court, the trial judge stated that he determined that an adequate record had been maintained by the referee. He then read the order which set the hearing and stated the following: "And I guess it's obvious from that that, if the Department can't satisfy the Court that they have a reasonable plan for the placement of the children, the Court is not going to terminate parental rights."
An adoption counselor for the State Department of Human Resources (DHR) then presented evidence. The counselor testified that she made the decision to allow the filing of the petitions because of overwhelming evidence. The decision is made after considering the particular situation, and the likelihood of adoption is not a consideration. An adoptive home is not sought until the department has permanent custody.
Unless the foster parents want to adopt the daughters and let them visit with each other, the department will try to find an adoptive home where all three siblings can be placed together. This is more difficult than placing single children, as is placing black children as compared to placing white children. However, girls are easier to place than boys. It is easier to place younger children for adoption, and the younger daughters will make the group more appealing. Last year there were five groups of three or more children placed in adoptive homes.
DHR publicizes children available for adoption through pamphlets, through pictures and write-ups on the children, through the Alabama Resource Book, and working through churches.
The counselor could not guarantee the placement of the daughters, but her opinion was that the daughters should never go home, even if they were never adopted.
After a thorough review of the evidence, we note that the incidents that occurred would qualify this case as one for termination. However, on rehearing the parents have persuaded this court that a viable alternative to termination exists.
The father states that he was not in the home when most of the problems occurred, that he no longer has a drinking problem, and that he is steadily employed. He further states that he has made every effort to adjust his circumstances to meet the needs of the children, in accordance with §26-18-7(b), Ala. Code 1975.
In fact, the record shows that the father has been in the same employment for three years and has paid support for the children. He and the mother have lived together in the same home since May 1990, and testimony indicates adequate financial resources and the stability of housing, utilities, and food supplies since that time. The assistance of the mother's twenty-year-old *Page 708 
daughter has also contributed to the stability of the household. In addition, the mother began attending parenting classes and was regularly visiting with the children.
Therefore, we find that, because of an apparent diligent family effort to meet the needs of the children, at the present time there is a viable alternative to termination and that this case is due to be affirmed.
ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; APPLICATION FOR REHEARING GRANTED; AFFIRMED.
ROBERTSON, P.J., and THIGPEN, J., concur.