THOMPSON, Judge.
H.P.K. (“the father”) and E.F. (“the mother”) have a daughter, Z.F. (“the child”); the parties have never married. This case concerns the father’s visitation with the child.
On April 13, 1999, the Department of Human Resources (“DHR”) began investigating allegations that the father had sexually abused the child. On August 18, 1999, the father filed a complaint seeking to determine the paternity of the child, and to establish his child-support obligation and visitation rights. The mother filed a motion to deny the father visitation, alleging in her motion that DHR’s social workers had concluded that the father had sexually abused the child. The senior trial referee conducted a hearing on the pending motions, and the referee awarded the father supervised visitation with the child.
The father sought a rehearing pursuant to § 12-15-6(d), Ala.Code 1975, and the juvenile court (hereinafter the “trial court”) granted the father’s petition for a *127 rehearing. The trial court made DHR a party to the action and ordered it to supervise four visits between the father and the child. On May 16, 2001, the trial court ratified and confirmed the referee’s order, except for the portion addressing the issue of visitation. The trial court awarded the father unsupervised weekend visitation. Neither the referee nor the trial court made findings of fact related to the alleged sexual abuse in this case. On May 22, 2001, the mother filed a timely notice of appeal.
The father testified that his relationship with the mother began in 1993. He testified that he asked the mother to marry him when she became pregnant with the child, but that she refused; the father’s name was not on the child’s birth certificate at the time of the child’s birth. The father testified that he visited the child approximately once a month, always with the mother or her family present.
The mother testified that when the child was approximately 17 months old, she first communicated to the mother that the father was sexually abusing her; the mother stated that two medical examinations were inconclusive regarding whether the abuse had occurred.
The father testified that on April 5, 1999, he visited the child at the mother’s home from around 10:00 a.m. until around 3:30 p.m. The mother was not home during most of that visit, but two members of her family were present. The father testified that during the April 5, 1999, visit, he and the child never left the front yard and that he and the child were never alone. The mother testified that she returned home from work shortly before the father departed. According to the mother’s testimony, she returned from changing her clothes in her house when the father and child were getting out of the cab of the father’s truck.
The mother testified that after the father left her home on April 5, 1999, the child made statements indicating that the father had sexually abused her. The mother took the child to the emergency room at Children’s Hospital; doctors found some physical evidence indicating sexual abuse. Vanessa McKinstry, a DHR social worker, testified that the child told her during her investigation that the abuse had occurred in the father’s truck on the same day she was taken to the emergency room.
Dr. Michelle Amaya, a medical evaluator for Children’s Hospital Intervention and Prevention Services (“CHIPS”), examined the child on May 5, 1999, and issued a report on May 12, 1999. Dr. Amaya reported that the child’s grandmother informed her that the child had changed since the time the alleged abuse occurred and that she was angry and disrespectful and that the child had nightmares about monsters and about the alleged abuse. Dr. Amaya reported that her physical examination of the child indicated that the child had been sexually abused. Dr. Ama-ya stated in her report that her findings were “highly concerning” and that she found typical indicators of sexual abuse.
Dr. Richard Ince, a clinical psychologist, stated that, in his opinion, the child had been sexually abused by her father; that the child’s statements were reliable and consistent with abuse; that there was no evidence that the child had been coached; and that the positive CHIPS report by Dr. Amaya “strengthen[ed]” his recommendation that the father only be awarded supervised visitation.
Dr. Donald J. Wendorf performed psychological evaluations on the child and her mother and father, and he submitted to the trial court a report stating that the father did not demonstrate signs or symptoms of psychological or behavioral *128 problems. Dr. Wendorf also stated in his report that the father “presented as an intelligent, self-assured, poised, articulate man.” Dr. Wendorf stated, “I think it is improbable to conclude that [the father] sexually abused his daughter,” but, “it is probably impossible to form any definite conclusions about any alleged abuse” of the child. Dr. Wendorf recommended that the father’s visitation be resumed, to be supervised by DHR or a neutral party named by the trial court and gradually increased as appropriate to the circumstances, the child’s age, and the ability of the parents to work together.
During the hearing before the referee, the sole issue was whether the father’s visitation with the child should be supervised or unsupervised. The referee, after a lengthy hearing, awarded supervised visitation to the father. The trial court, without receiving any additional ore tenus testimony and based upon an “adequate record before the court,” awarded the father standard, unsupervised visitation. The mother argues that the evidence does not support the trial court’s order.
A trial court is to accept the findings of a referee unless the findings are clearly erroneous; to the extent that the trial court adopts the findings of the referee, the same standard applies in appellate review. Rule 53(e)(2), Ala. R. Civ. P.; Harp v. Harp, 462 So.2d 372 (Ala.Civ.App.1984). In this case, the trial court did not adopt the referee’s findings regarding visitation; therefore, there is no presumption of correctness with regard to the referee’s findings regarding visitation. State Dep’t of Human Res. v. L.W., 597 So.2d 703 (Ala.Civ.App.1992). However, because the trial court did not receive any evidence in this case and was not able to observe the witnesses, its judgment rejecting the referee’s findings is also not entitled to the ore tenus presumption of correctness. Id. at 705.
Two of the witnesses in this case offered opinions that the child had been sexually abused. Dr. Wendorf opined that it was unlikely that the father had sexually abused the child. However, even Dr. Wendorf recommended that the father’s visitation with the child be supervised. Based on that evidence, the referee awarded the father supervised visitation. Rule 53(e)(2), Ala. R. Civ. P., provides that “after [a] hearing ” the trial court may reject or modify a referee’s report. In this case, the trial court did not conduct a hearing. Therefore, the trial court was in the same position as this court when reviewing the transcript of the evidence received by the referee. The courts’ primary interest with regard to visitation is the protection and enhancement of the best interests and welfare of the child. E.W. v. Montgomery County Dep’t of Human Res., 602 So.2d 428 (Ala.Civ.App.1992). Given the evidence in the record, we conclude that the trial court erred in rejecting, without conducting a hearing, the referee’s findings that the father should be awarded supervised visitation because the evidence in the record does not establish that award of supervised visitation was “clearly erroneous.” See Rule 53(e)(2), Ala. R. Civ. P.
On remand, the trial court is instructed either to conduct a hearing at which it will receive evidence or to enter a judgment confirming the referee’s findings.
The mother’s request for an attorney fee is denied.
REVERSED AND REMANDED.
YATES, P.J., and CRAWLEY and PITTMAN, JJ., concur.
MURDOCK, J., concurs in the result.