The trial court changed custody of the minor child from the mother to the father, stating that such a change would materially promote the child's best interests. The court found that the mother's conduct had detrimentally affected the relationship of the father with his seven-year-old son and that a change in circumstances since the original decree of divorce warranted a change of custody. From the court's modification of custody, the mother appeals.
She argues that the trial court considered illegal evidence from an in camera conference with the minor child in reaching its decision; that the parties' visitation problems are not grounds for a change of custody; and that, generally, the court failed to correctly apply the McLendon modification standard.
It is well settled that the trial court's ore tenus determination is clothed with a presumption of correctness.Matter of Young, 456 So.2d 823 (Ala.Civ.App. 1984). The question presented by this case is whether there was evidence to support the court's judgment that a change in custody would materially promote the child's best interests and would overcome the inherently disruptive effect caused by uprooting the child. See Ex parte McLendon, 455 So.2d 863 (Ala. 1984). Having found such evidence in the record, we need not consider the effect or legality of the n camera conference.
The parties were divorced in 1982 and custody of the minor child was placed in the mother, pursuant to a settlement agreement giving liberal visitation rights to the father, including summer vacations. Prior to the current proceedings, which commenced in May of 1986, problems arose over the handling of visitation. The testimony is sharply conflicting regarding the cause of the problems, but suffice it to say that whatever the real cause, the effects of the problems between the parents were visited upon the child, resulting in his having psychological counseling. The record *Page 911 
shows that the child suffered from severe nightmares. The maternal grandmother testified that the child spoke of killing his father. She also testified that the father had paid a man $500 to kill the mother. That testimony was strongly disputed. Also disputed were allegations that the father physically abused the child. Undisputed was the fact of the mother's violation of court orders regarding the father's visitation rights and orders to appear before the court. The following letter of the mother was read into evidence:
 "It's over. I will not be a victim and Jason will not be a victim of Judge Younger's or Dan Rodenbaugh's ever again. Jason has been tortured with five spankings every day since the Sunday I left him two weeks ago. I will send pictures. I wanted to do the same thing to Dan and Ceceilia, I wanted to take their punishment in my own hands, Mom, but I know if I went to jail I'd never see Jason again, so, I will let God do what He sees fit, because you and I both know the Court System won't touch Dan and Ceceilia. Jason was being punished for trying to call me for help. I will not play their game by their rules at the expense of my little boy's warped mind. Mom, I can't handle Judge Younger or his sick mind. I won't be back. I don't care how another court would rule if we got Younger off the case — I don't care — I will not make Jason answer any more questions, trust any more judges or adults in believing him and his fears. He told me he was hurt a lot on his dad's farm and his dad said he would kill me if he told me that his dad was hitting or jerking him — Please tell Bryce Davis this explains all the nightmares Jason was having about his dad killing me. Bryce was absolutely correct on the child abuse. I am so sorry, Mom, I wish I could tell you where I am taking Jason, but I don't want to put you through any more of my problems with Dan — nine years is enough and I am so sorry for all the pain I caused you and Dad. You must know that I will do fine wherever I go and Jason will at least be safe from those two weirdos. Please tell Don and Verla (especially Don) thanks for nothing, Jason will never hear his name again. When I signed the power of attorney over to you it was just in case Dan had another contract to have me killed, to get me out of his way so he could have Jason — well, go ahead and do whatever you would if I was dead. Please let John Caylor read this. I feel bad I was not strong enough to wait for a court hearing and all that mess, but I can't take another chance of Dan even getting to spend a supervised weekend with Jason — no way. I have a very upset, mentally-disturbed little boy I am going to nurse back to health — somehow, later, Mom, I will call. Okay? Tell the media — tell everybody you can so Younger can be sent to a psychiatrist. I love you, Mom, you are my strength, you are the best."
At the time of the final hearing in this case, the mother had possession of the child and their whereabouts were unknown.
The mother is correct in stating that visitation disputes alone are insufficient to necessitate a change in custody.Pons v. Phillips, 406 So.2d 932 (Ala.Civ.App. 1981). However, the record in this case can support a conclusion of more than a mere visitation problem. The court could easily question the stability of the mother and her ability to care for the child; the facts support the court's conclusion that the mother's conduct has affected and would continue to detrimentally affect the relationship between the father and the child. The record also supports the court's conclusion that circumstances have changed since the original divorce decree. The record shows that the father has remarried and is employed. He has never failed to submit to the jurisdiction of the court in this case or to comply with its orders. He has expressed his desire to see that his son obtains whatever help he needs in dealing with any psychological problems he might have. In short, the court had evidence upon which to determine that a change of custody would materially promote the child's best interests. There was evidence upon which the court could determine *Page 912 
that the disruptive effect of a change of custody would be more than overcome by the material promotion of the child's best interests that would be afforded by the stability and protection of the father's home.
This case is affirmed.
AFFIRMED.
BRADLEY, P.J., and HOLMES, J., concur.