CRAWLEY, Presiding Judge.
This is a custody-modification case. T.J.H. (“the father”) and S.N.F. (“the mother”) were married and had a daughter, A.H., together. The father and the mother divorced in September 2002, while the father was on active military duty awaiting deployment with the United States Marine Corps. The final judgment of divorce awarded the father and the mother joint legal custody of A.H. with the mother exercising sole physical custody.
The mother had four children including A.H., and each child had a different father. In April 2004, the Morgan County Department of Human Resources (“DHR”) filed a dependency petition with the juvenile court of Morgan County alleging that A.H. had been neglected or abused, based on a finding by DHR that the mother’s boyfriend had physically abused A.H.’s half sibling; DHR also determined that the mother had a drug-abuse problem. The juvenile court held a 72-hour hearing, and the parties present at the hearing agreed that the children should be in the custody of DHR. The mother testified at the hearing that the father was in Iraq, but she stated that he was not A.H.’s “legal” father. Based on that testimony, the juvenile court issued an order vesting pendente lite custody of A.H. with DHR.
While the father was stationed in Afghanistan, he received notice through the Red Cross in Afghanistan that A.H. was in foster care. The father' contacted DHR via telephone and arranged for DHR to move A.H. to his sister’s home. He attempted to take emergency leave from his military assignment so that he could petition the court for custody of A.H., but his request was denied. After he completed his military assignment, the father was allowed to take leave, and on July 5, 2005, he filed with the circuit court of Morgan County a motion for modification of custody and for emergency relief. The circuit court awarded pendente lite custody of A.H. to the father on July 7, 2005. The juvenile court subsequently dismissed without prejudice DHR’s pending dependency petition relating to A.H. After an ore tenus proceeding on the father’s motion for modification, the circuit court en *672 tered an order on September 27, 2005, denying the father’s motion to modify custody and awarding custody to the mother as follows:
“9. It is the Court’s intention that the temporary custody of [A.H.] placed with the [mother] shall create no presumption in her favor in the event of a future motion or petition to modify custody. The standard that shall apply to a future custody change so long as this Order remains in effect is the best interests of the child. The Court will set this ease for a review of custody or custody modification proceedings, without prepayment of a civil docket fee, upon motion of the [father], the [mother], or DHR.”
The father filed postjudgment motions on September 29, 2005, requesting in part that the circuit court issue a final custody order. The circuit court denied the post-judgment motions after conducting a hearing, and the father timely appealed to this court.

The Finality of the September 27, 2005, Order

It is of paramount importance in custody cases for the trial court to determine whether it is conducting an initial custody proceeding or a custody-modification proceeding, and to indicate whether a custody order is a final custody judgment or a pendente lite order. Rich v. Rich, 887 So.2d 289, 299 (Ala.Civ.App.2004). A “temporary order” as to custody or a “temporary custody award” is generally considered a final order, but a pendente lite custody order is not a final order. Ex parte J.P., 641 So.2d 276, 278 (Ala.1994).
A pendente lite custody order is an order that is effective only during the pen-dency of the litigation in an existing case and is usually replaced by the entry of a final judgment. Hodge v. Steinwinder, 919 So.2d 1179, 1182 (Ala.Civ.App.2005). Pendente lite custody orders allow a trial court to take into consideration developments in the lives of the child and the parties that naturally occur during the gap in time between the filing of an action and the final hearing in the matter. Id.
However, a “temporary custody award” or a “temporary order” as to custody is a “final” custody award or judgment. Despite its name, a temporary order as to custody is intended to remain effective until a party seeks to modify it. It may be modified if the trial court reviews the case and determines that changed circumstances that warrant a modification have come into existence since the last custody award. 919 So.2d at 1182-83. Such an award is not a pendente lite award. Id.
The language often used by the trial courts is confusing. Custody, by its very nature, is always temporary and never permanent, and the trial court always retains jurisdiction to modify custody under the appropriate circumstances even though the temporary custody of a child may have been determined. Ex parte J.P., 641 So.2d at 278. “Semantically, this entire matter would be simpler if all courts declined to use the phrase ‘temporary custody’ and simply used ‘pendente lite’ or ‘custody’ as circumstances require.” Id.
“Likewise, the distinction between initial or original custody proceedings and modification proceedings is important because of the different standards of proof required.” Id. The “best interest of the child standard” applies when custody has not previously been determined. “However, if there is a judgment granting custody to one parent, or if one parent has ‘given up’ legal custody, then custody will be changed only if it would ‘materially promote’ the children’s welfare.” Ex parte Couch, 521 So.2d 987, 989 (Ala.1988), citing Ex parte McLendon, 455 So.2d 863 (Ala. *673 1984). The McLendon standard considers whether a change in custody would materially promote the welfare of the child and tries to prevent the uprooting of the child. Ex parte Couch, supra. This standard creates a presumption in favor of the party who has custody of the child at the time of the filing of the modification motion and assumes that uprooting the child would be a traumatic experience. See Ex parte McLendon, supra, and Couch, supra. A pendente lite order awarding custody to a parent does not create a presumption in favor of the party who is awarded penden-te lite custody. Reid v. Reid, 897 So.2d 349, 355 (Ala.Civ.App.2004).
In this case, the court’s September 27, 2005, order denied the father’s motion to modify custody because, the court determined, the father did not meet the McLen-don standard. In the same order that the circuit court purported to apply the McLendon presumption in favor of the mother it stated that the best-interests^of-the-child standard would apply in the event either party filed a motion to modify custody in the future; awarded the mother “temporary” physical custody; and purported to grant DHR, the mother, or the father the right to move for a modification in the future without having to pay a civil docket fee. The custody award at issue was not made by the circuit court pending further litigation of the existing case; it was made with the intent that it remain effective until such time as the father, the mother, or DHR sought a custody modification. Therefore, this custody award was not a pendente lite custody award; rather, it was a “temporary custody” award, i.e., a final judgment from which an appeal will lie.
The record indicates that the judgment of divorce awarded the mother sole physical custody of A.H. Despite the proceedings in this case, the mother never gave up her status as the custodial parent. The only orders relating to custody were pen-dente lite orders; thus, the McLendon presumption continues to inure to the benefit of the mother, and the McLendon standard should be applied if the father moves for modification of custody in the future. The order of September 27, 2005, was a final judgment, and the payment of filing fees would be necessary to institute a new proceeding. See Farmer v. Farmer, 842 So.2d 679, 680 (Ala.Civ.App.2002).

Whether the McLendon Standard or the Best-Interest Standard Applies

On appeal, the father first contends that the circuit court erred in applying the McLendon standard instead of the “best interest” standard to his motion for modification. Specifically, he argues that the mother lost the preferential status given to her by virtue of the McLendon standard when DHR received temporary custody of A.H. As noted above, all prior custody orders were pendente lite orders and did not serve to shift the burden placed on the father by virtue of the mother’s status as the custodial parent.
In addition, the father failed to preserve this issue for appeal. The father did not present this argument to the circuit court. This court may not consider an issue that is raised for the first time on appeal. Burleson v. Burleson, 875 So.2d 316, 322 (Ala.Civ.App.2003), and Andrews v. Merritt Oil Co., 612 So.2d 409 (Ala.1992). Therefore, we will not further address this issue on appeal.

Whether the Evidence Supports the Denial of the Father’s Motion for a Modification of Custody

The father next contends that the circuit court’s judgment denying the father’s motion for a modification of custody was so unsupported by the evidence as to be plainly and palpably wrong. As stated *674 above, after an ore tenus proceeding, the circuit court issued a judgment denying the father’s motion for the modification of custody. Although the circuit court found that the mother had used marijuana after A.H. and two of the mother’s other children were removed from her custody by DHR and that she failed to comply fully with the recommendation of DHR’s staff regarding counseling for her long-term use of narcotics, the circuit court concluded that, despite the mother’s shortcomings, the father had failed to prove that “the material benefits to [A.H.] from changing her physical custody [would] more than outweigh the disruptive effects of uprooting her from the physical presence, association, bond and care of her mother.”
The circuit court specifically found that the father’s time and association with A.H. had been limited for several years before he returned to Alabama in June 2005; that the father’s military service commitment would require him to move A.H. to a military base in Hawaii, away from family, friends, and school; that the father would have to hire a live-in nanny to care for A.H.; that, if the father is required to be away from home, a person who is unknown to the court would be A.H.’s full-time caregiver; that, if the father is redeployed to a foreign country, A.H. would either remain in Hawaii with non-relatives or have to be brought back to Alabama; and that for financial reasons it would almost be impossible for the mother to travel to Hawaii to visit A.H.
The evidence at trial demonstrated the following facts. As noted above, the mother lost custody of all three of her other children as a result of DHR’s dependency petition. The basis for DHR’s intervention was the physical abuse of one of the mother’s children by the mother’s boyfriend. Despite the boyfriend’s conviction for the abuse of the mother’s other child, the mother continued to live with the boyfriend, who, in addition to abusing the mother’s child, engaged in domestic violence against the mother. The mother left the children with the boyfriend while she worked.
The mother also used marijuana and several prescription painkillers. She admitted that she had used the prescription drug Xanax with marijuana; she also admitted that she did not have a prescription for Xanax. The mother would not admit, however, that she had any problems with drug abuse or with being a victim of domestic violence.
“ ‘The judgment of a trial court based on ore tenus evidence is entitled to a presumption of correctness on appeal. Hermsmeier v. McCoy, 591 So.2d 508 (Ala.Civ.App.1991). However, that presumption can be overcome when there is an absence of material evidence to support the trial court’s factual findings. Means v. Means, 512 So.2d 1386 (Ala.Civ.App.1987). Thus, while issues concerning child custody are within the sound discretion of the trial court, that judgment will be reversed if it is so unsupported by the evidence that it is plainly and palpably wrong. Hermsmeier, supra, at 509; Glover v. Singleton, 598 So.2d 995 (Ala.Civ.App.1992).
“ ‘A parent seeking to modify a previous custody order bears a heavy burden of proof. The parent must prove that a material change in circumstances has occurred since the prior judgment, and that a change of custody will materially promote the child’s best interest and that the benefits of the change will more than offset the inherently disruptive effect caused by uprooting the child. Ex parte McLendon, 455 So.2d 863, 866 (Ala.1984).’”
*675 Kelley v. Akers, 793 So.2d 821, 826 (Ala.Civ.App.2001) (quoting Vick v. Vick, 688 So.2d 852, 855 (Ala.Civ.App.1997)).
The circuit court’s conclusion that the father did not meet the burden imposed on him by Ex parte McLendon is simply unsupported by the evidence in this case. The father has chosen a career in the United States military, is a stable parent with no drug-abuse problems, and has made appropriate arrangements for the care of the child if she were to be placed in his custody. The mother is a drug abuser who, despite the fact that her boyfriend was accused of abusing her child,[1] continued to live with that boyfriend until he pleaded guilty and was incarcerated as a result of that abuse; lost custody of her children in part because of that boyfriend; and who refuses to adjust her circumstances by admitting her drug problem and bettering herself through parenting classes. The father has demonstrated that A.H.’s life will be materially promoted — by an increase in stability, safety, and appropriate parenting behavior — by placement in his custody. Accordingly, we reverse the judgment of the trial court and remand the cause for entry of a judgment awarding custody of the child to the father.
REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON and PITTMAN, JJ., concur.
BRYAN, J., concurs specially, with writing.
MURDOCK, J., concurs in the result, without writing.

. As I noted in the dissent in Kent v. Green, 701 So.2d 4 (Ala.Civ.App.1996) (Crawley, J., dissenting):
" ‘Research ... reveals that more than half of men who batter their female partners also abuse their children.... Child abuse usually begins after a pattern of wife abuse has been firmly established. The abuse inflicted on the child by a battering husband is likely to be serious. Seventy percent of injuries inflicted on children by male perpetrators are severe and eighty percent of child fatalities within the family are attributable to fathers or father surrogates. The more severe the abuse of the mother, the worse the child abuse.
[[Image here]]
" 'A lack of information about family violence and the danger it poses to adult and child victims has led the courts to consider the abuse of wives or mothers by male partners as largely irrelevant to custody deliberations and awards, concluding either that men who are violent toward their partners may, nonetheless, be very good fathers or that domestic violence has little effect on the children or that even if the father was violent during cohabitation, he will cease beating and terrorizing the mother upon separation. All of these conclusions are erroneous. Custody cases occur at a time when battered women and children may be most acutely vulnerable to the coercive controls and violent manipulations of battering men. Unless the judiciary is carefully informed about the impact of domestic violence on children and the abused parent, it will inadvertently issue custody and visitation awards that further endanger the abused parent and the children, themselves, who are at risk of both abuse and severe emotional repercussions.' ”
701 So.2d at 7 (quoting Barbara J. Hart, Family Violence and Custody Codes, Juvenile & Family Court Journal, 1992, vol. 43, no. 4, at 29).
The mother’s boyfriend in the present case abused both the mother and one of her children. The mother continued to live with the boyfriend even after he was charged with child abuse, indicating that the mother failed to appreciate the seriousness of the situation and that the mother elevated her desires above the safety of her children.