On Application for Rehearing
This court's opinion of May 25, 2007, is withdrawn, and the following substituted therefor:
Mark A. Evans ("the father") appeals from the Montgomery Circuit Court's judgment denying his petition to modify custody. We affirm in part, reverse in part, and remand.
Joni Lynn Morgan Evans ("the mother") and the father were never married. In September 1999, the mother gave birth to a girl ("the child"). After the father's paternity of the child was determined, the mother received sole legal and physical custody of the child. The father paid child support and had supervised visitation rights. In 2000 and 2001, the parties came before the trial court on the father's request for unsupervised visitation. The trial court heard the father's request and also took evidence relative to the father's failure to exercise visitation and disputes with his mother during his visits with the child. The trial court determined that the father's visitation would continue to be supervised until otherwise ordered. In July 2002, the parties agreed that the father would have scheduled, unsupervised visitation with the child; the trial court adopted the agreement in an order dated September 25, 2002.
In June 2005, the father, who then lived with his mother, filed a petition for a rule nisi and a petition to modify custody. The father alleged that the mother had refused to allow him visitation with the child for 15 months and that the mother had changed her place of residence 11 times in the preceding 5 years, frequently without informing him where the child resided. The father asked the trial court to hold the mother in contempt and to award him joint custody of the child. The father alleged that the mother's refusal to allow visitation and to advise him of the child's location was a material change of circumstance that justified a change in custody. The trial court set the petition for a hearing on July 25, 2005.
The mother was personally served with a copy of the father's petition on July 14, 2005. The record shows that the mother received notice of the July 25, 2005, hearing, but she chose not to appear due to a conflict with her nursing studies. The mother later testified that she told the father's attorney that she could not attend the hearing. The mother also testified that she attempted to contact the court regarding her absence and was told that she "had to have a motion filed"; the record does not show why the mother did not notify the court in writing of her absence. The trial court was unaware of the mother's actions.
Knowing only that the mother had failed to appear at the July 25, 2005, hearing, the trial court found her in contempt. On July 26, 2005, the trial court ordered the mother to deliver the child to the father on July 29, 2005, for a three-week visitation period. The order stated that if the mother failed to comply she would "be immediately incarcerated in the Montgomery County Jail." The order, however, was sent to an address that did not exist and was later returned to the circuit clerk. It is undisputed that the mother never received the July 26, 2005, order.
On August 1, 2005, without knowing that the mother had not received the July 26, 2005, order, the trial court held a hearing on the father's petition to modify custody and the mother's failure to deliver the child to the father as ordered. The trial court entered the following order, which we quote in its entirety:
 "THIS CAUSE comes before the Court upon the Petition to Modify filed *Page 45 
by the [father] seeking joint legal custody.
 "Testimony showed that the [mother] refused to comply with the prior Orders of this Court even though in said prior Order she was notified that she would be incarcerated in the Montgomery County Jail if she failed to abide by the visitation.
 "Testimony further revealed that the [father] and his mother went to pick up the child at the designated pickup spot and the [mother] failed to appear.
 "Testimony further revealed that counsel for the [father] placed a call to the [mother] via her cell phone, to which she failed to respond.
 "Further evidence disclosed that the [mother] leaves the child in a trailer which is not connected to the home, then vacates the trailer and occupies the home with her live-in boyfriend, leaving the child unattended.[1]
 "The severity of these facts, especially in light that the [mother] failed to appear, concerns the Court greatly.
 "Therefore, it is ORDERED as follows:
 "1. That the [mother] be incarcerated in the Montgomery County Jail for failure to abide by the terms of this Court's prior Orders.
 "2. That custody is hereby immediately transferred from the [mother] to the [father].
 "3. That the Sheriff shall accompany the [father] to obtain the child and the [father] is ordered to immediately place the child in kindergarten in his jurisdiction (school zone).
 "4. That the [mother's] visitation is hereby terminated pending further Order of this Court.
 "5. That the [father's] child support obligation is hereby terminated.
 "6. That the [mother] is ordered . . . [to pay the father's attorney fees.]
 "7. [That the mother shall pay the fees and costs referenced in the Court's prior Orders.]
 "8. Upon a Petition being filed the Court will consider child support to be paid by the [mother] to the [father].
 "9. That a copy of this Order be transmitted to Counsel for the [father] and a copy served on the [mother]."
On August 1, 2005, the mother was detained and the child was delivered into the father's custody. In an order filed with the circuit clerk's office on August 2, 2005, the trial court stated:
 "Present in Court were the [mother] and counsel for the [father].
 "The Court hereby orders that a hearing be conducted on Friday, September 30, 2005, . . . as it relates to support of the minor child, custodial/visitation time with the [mother], and furtherance of determining whether the [mother] has complied with this Court's prior Orders as it relates to judgments entered in by this Court."
On September 21, 2005, the mother filed an untimely motion to vacate the August 1, 2005, order. See Rule 59(e), Ala. R. Civ. P. The trial court purported to deny the motion on September 23, 2005.
The record does not show what took place at the September 30, 2005, hearing. The case-action summary contains the following notation: "Custody, Temp. Hearing OSH: Oct. 19, 2005, at 9:00 a.m." The *Page 46 
record does contain a "Corrected Order" dated November 7, 2005, which purportedly set "a temporary hearing" before a special master on October 19, 2005, and also set a final hearing. It is unclear whether this order is misdated or whether it mistakenly includes language regarding the October 19, 2005, hearing. Notably, the order recognized that service of the July 26, 2005, order had not been perfected on the mother and concluded that, "therefore, the matter of change of custody is now before the Court for proper consideration."
On October 19, 2005, the special master took ore tenus evidence on the issue of the child's physical custody and subsequently submitted a detailed report of reference to the trial court. Among other findings, the special master reported that the process server who had served the mother with the father's petition and the sheriff's deputy who had delivered the child into the father's custody testified that they had found the child unattended in the mother's mobile home along with several other children. The sheriff's deputy testified that when she picked up the child to be delivered to the father, the children in the mobile home appeared to be well-dressed, clean, and not malnourished. The mobile home is located on the property of the mother's boyfriend, but out of view of the boyfriend's house. The mother denied that she had left the child unattended, and she asserted that her teenage son, the child's half brother, watched the child. The father testified regarding the mother's refusal to deliver the child for visitation and her changes of residence without informing him. The parties also offered disputed testimony regarding the character of the mother's boyfriend and an alleged confrontation between the mother's boyfriend and the father during one of the father's visitations. The father testified that during the alleged confrontation the mother's boyfriend had held a gun; the mother, however testified that it was the father's mother who had held a gun.
The special master's report concluded that "no harm can be done, pendente lite, with the physical custody of the child remaining with the [father] pending the final hearing in this matter." The special master also found that "the benefits from the change in custody [to the father] has since offset the inherently disruptive effect caused by the change, and a change in custody may materially promote the child's best interests." The special master recommended that "for pendente lite purposes: . . . the [father] shall continue to have the temporary physical custody of the parties' minor child . . . pending further Order of the court." The trial court read and confirmed the report of reference and allowed the parties to object to and dispute the findings in the report at the final hearing. Only the mother filed written objections to the report.
Pursuant to the mother's request, the trial court ordered a psychological evaluation of the child before the final hearing. The psychologist met with the child five times. He reported that the child had long-term indications of low self-esteem and that she was reserved and shy. He further reported that the child was thriving with the father and was adjusting well to the change of custody. The psychologist concluded that the child would need a great deal of structure and support and noted that the mother acknowledged that her home lacked structure and organization. The trial court accepted the report of the psychologist's evaluation as an exhibit at the final hearing.
By the time of the final hearing on October 2, 2006, the father indicated that he was seeking full custody of the child rather than joint custody as asserted in his petition to modify. At the final hearing *Page 47 
the trial court recognized that the mother did not receive the July 26, 2005, order. The trial court also stated that it agreed with the mother that the burden remained on the father to satisfy the standard set out in Ex parte McLendon,465 So.2d 863 (Ala. 1984).
The trial court received ore tenus testimony substantially similar to that heard by the special master. The testimony focused on the living arrangements and respective stability of each party's home, on the child's withdrawn and shy demeanor, and on the mother's refusal to allow the father visitation.
In its final order dated October 10, 2006, the trial court stated that the mother had been "ordered to relinquish the child to the [father] temporarily. . . ." The order stated:
 "The question now centers on whether or not the [father] has met his burden of a material change of circumstances as outlined in the McLendon
case."
After stating its findings of fact, the trial court held that the father did not satisfy the McLendon standard as to the change of physical custody. Regarding the issue of joint legal custody, the trial court found that the father had satisfied the McLendon standard. The trial court ordered that the child be returned to the mother and that the father pay child support and have visitation with the child every other weekend and one month each summer. The father filed a timely notice of appeal to this court.
The father argues that the trial court incorrectly required him to satisfy the McLendon standard.
 "Initially, we note that the ore tenus rule only applies to questions of fact and that where the trial court resolves a factual issue in a custody action its determination on that issue is afforded a presumption of correctness on appeal. Renter v. Neese, 586 So.2d 232 (Ala.Civ.App. 1991). However, when this court is presented with an issue of law, such as the application of the correct child-custody-modification standard, we review the judgment of the trial court de novo, without affording it any presumption of correctness. Ex parte Perkins, 646 So.2d 46
(Ala. 1994).
 "In Ex parte McLendon, supra, our supreme court held that the proper standard to be applied in child-custody cases wherein a parent has either voluntarily forfeited custody or has lost custody due to a prior judgment is whether there has been a material change in circumstances since the prior judgment; whether a change in custody will materially promote the best interests of the child; and whether the benefits of the change in custody will more than offset the inherently disruptive effect caused by uprooting the child. 455 So.2d at 865."
Barber v. Moore, 897 So.2d 1150, 1153
(Ala.Civ.App. 2004).
According to the father, the August 1, 2005, order was a custody order to which the mother did not file a timely challenge. The father argues that, as a result, theMcLendon burden shifted to the mother. Additionally, the father notes that after the August 1, 2005, order, the child resided with him for 18 months during which she began and completed kindergarten and began her first-grade year. The mother argues on appeal that the August 1, 2005, order was a pendente lite order that did not result in a shifting of the burden under McLendon.
In T.J.H. v. S.N.F., 960 So.2d 669 (Ala.Civ.App. 2006), this court recently explained the difference between custody orders and pendente lite orders, particularly with respect to a trial court's use of the term "temporary order." *Page 48 
"A pendente lite custody order is an order that is effective only during the pendency of the litigation in an existing case and is usually replaced by the entry of a final judgment.Hodge v. Steinwinder, 919 So.2d 1179, 1182
(Ala.Civ.App. 2005). Pendente lite custody orders allow a trial court to take into consideration developments in the lives of the child and the parties that naturally occur during the gap in time between the filing of an action and the final hearing in the matter. Id.,
"However, a `temporary custody award' or a `temporary order' as to custody is a `final' custody award or judgment. Despite its name, a temporary order as to custody is intended to remain effective until a party seeks to modify it. It may be modified if the trial court reviews the case and determines that changed circumstances that warrant a modification have come into existence since the last custody award. 919 So.2d at 1182-83. Such an award is not a pendente lite award. Id.
"The language often used by the trial courts is confusing. Custody, by its very nature, is always temporary and never permanent, and the trial court always retains jurisdiction to modify custody under the appropriate circumstances even though the temporary custody of a child may have been determined.Ex parte J.P., 641 So.2d [276,] 278 [(Ala. 1994)]. `Semantically, this entire matter would be simpler if all courts declined to use the phrase "temporary custody" and simply used "pendente lite" or "custody" as circumstances require.'Id." T.J.H., 960 So.2d at 672. This court has held that the McLendon standard shifts after the entry of a custody order, whereas, after the entry of a pendente lite order, it does not. See Sims v. Sims, 515 So.2d 1, 2-3
(Ala.Civ.App. 1987).
When the trial court understood that the mother had not received the July 26, 2005, order, it thereafter treated the August 1, 2005, order awarding custody to the father as a pendente lite order — an order effective only during the pendency of the litigation to be replaced by a final order.See T.J.H., supra. It required the parties to submit evidence to a special master and at a final hearing regarding the issue of custody; on the mother's request, it ordered that the child undergo a psychological evaluation; and it held its determination of child support until after the final hearing. Likewise, the special master considered the transfer of custody to the father as a pendente lite transfer pending a final hearing and determination. Indeed, the special master was charged with making a recommendation as to the matter at issue in the father's petition to modify — the physical custody of the child.
In light of this procedural history, and under the unique facts of this case, we find that the August 1, 2005, order was a pendente lite order. The father, therefore, had the burden of reasonably satisfying the trial court by the evidence that a change in the child's custody would materially promote the child's best interests and welfare. Ex parte McLendon, supra.[2]
The father next argues that the trial court erred in denying his petition to *Page 49 
modify physical custody because, the father asserts, he satisfied the McLendon standard set forth above.
 "When this Court reviews a trial court's child-custody determination that was based upon evidence presented ore tenus, we presume the trial court's decision is correct: `"A custody determination of the trial court entered upon oral testimony is accorded a presumption of correctness on appeal, and we will not reverse unless the evidence so fails to support the determination that it is plainly and palpably wrong. . . ."' Ex parte Perkins, 646 So.2d 46, 47 (Ala. 1994), quoting Phillips v. Phillips, 622 So.2d 410, 412
(Ala.Civ.App. 1993) (citations omitted). This presumption is based on the trial court's unique position to directly observe the witnesses and to assess their demeanor and credibility. This opportunity to observe witnesses is especially important in child-custody cases. `In child custody cases especially, the perception of an attentive trial judge is of great importance.' Williams v. Williams, 402 So.2d 1029, 1032
(Ala.Civ.App. 1981)."
Ex parte Fann, 810 So.2d 631, 633 (Ala. 2001);Marusich v. Bright, 947 So.2d 1068, 1070-71
(Ala.Civ.App. 2006).[3]
We have reviewed the record on appeal in its entirety, and we find that we need not discuss the facts in great detail. The father's June 2005 petition asserted that the mother's refusal to allow visitation, frequent changes of residence, and failure to notify the father of the child's location constituted a material change in circumstances and that, therefore, it would be in the child's best interests for custody to be placed with the father. Before the special master and at the final hearing, the father presented evidence indicating that his home offered more stability and organization than the mother's and that the psychologist had found that the child would function better in a more stable environment. The father also presented testimony indicating that the child was thriving in his custody. The parties vigorously disputed the evidence regarding the alleged confrontation involving the mother's boyfriend. The parties also disputed the father's allegation that the mother had left the child unattended in a mobile home while she was at her boyfriend's house.
Based on the record the parties have presented to us on appeal, we cannot say that the trial court was plainly and palpably wrong in finding that there was not sufficient evidence of the existence of a material change in circumstances. The father filed his petition to modify after the mother had denied him visitation for an extended period of time. The evidence presented to the special master and at the final hearing centered largely around visitation issues. However, "this court has held that `[c]ustody of children should not be modified due solely to problems of visitation.' Hays v. Elmore,585 So.2d [40,] 42 [(Ala.Civ.App. 1990)]; see also Ward v.Rodenbaugh, 509 So.2d 910 (Ala.Civ.App. 1987)." Smithv. Smith, 865 So.2d 1207, 1211 (Ala.Civ.App. 2003). TheSmith court explained:
 "While the record demonstrates the father's difficulty in dealing with the mother regarding matters of visitation, a change in custody is not proper in such instances. The trial court's contempt *Page 50 
powers are a sufficient method of regulating the mother's conduct in a manner that will enforce the visitation provisions of the trial court's judgments and best protect and serve the child's best interests."
Id.
Additionally, although the father did present testimony indicating that the mother had left the child unattended, this evidence was disputed, and the trial court specifically determined that it "was not founded." Furthermore, although it is undisputed that the father's home was, at the time of the hearing, more stable than the mother's, based on the stringent child-custody-modification standard set forth inMcLendon, supra, we cannot say that this fact alone shows that a change in custody would materially promote the best interests of the child. Although we may have reached a different result, the trial court was not plainly and palpably wrong in finding that the father had failed to satisfy theMcLendon standard as to the physical custody of the child.
Finally, the father argues that the trial court miscalculated the child-support award. The father listed $240 in monthly child-care costs on his CS-41 child-support income affidavit; the mother listed none. The father asserts that the trial court improperly included this amount in its calculation of child support that he was to pay to the mother. Neither the mother's CS-41 child-support income affidavit nor the testimony received at the hearing show that the mother would incur child-care costs. Indeed, nothing in the record shows that the mother would bear such an expense. In light of this lack of evidence, the trial court erred in including child-care costs as a part of its child-support determination. See Hoplamazian v.Hoplamazian, 740 So.2d 1100, 1105 (Ala.Civ.App. 1999).
Based on the foregoing, we find that the trial court correctly applied the McLendon standard to the father and was not plainly and palpably wrong in denying the father's petition to modify physical custody. It did, however, err in including child-care costs in its child-support calculation. We therefore affirm the trial court's judgment in part, reverse it in part, and remand.
OPINION OF MAY 25, 2007, WITHDKAWN; OPINION SUBSTITUTED; APPLICATION FOR REHEARING OVERRULED; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
PITTMAN, THOMAS, and MOORE, JJ., concur.
BRYAN, J., concurs in the result, without writing.
[1] The record does not show who testified at the hearing; however, the evidence indicating that the child was in a mobile home unattended originated from observations of the process server who served the father's petition on July 14, 2005.
[2] As the father argues, the child did reside with him for an extended period of one and one-half years during the pendency of the litigation. We are sensitive to the fact that this experience became a significant and formative part of the child's life. However, under the unique facts of this case, we believe that the trial court correctly treated the August 1, 2005, order awarding the father custody as a pendente lite order and that it correctly applied the McLendon standard to the father's petition to modify.
[3] We also note that a `trial court is to accept the findings of a referee unless the findings are clearly erroneous; to the extent that the trial court adopts the findings of the referee, the same standard applies in appellate review. Rule 53(e)(2), Ala. R. Civ. P.; Harp v. Harp, 462 So.2d 372
(Ala.Civ.App. 1984)." E.F. v. H.P.K., 825 So.2d 125, 128
(Ala.Civ.App. 2001).