MOORE, Judge.
 

 Daniel Chad Combs (“the husband”) appeals from the judgment of the Choctaw Circuit Court (“the trial court”) divorcing him from Christen Combs (“the wife”) to the extent that the judgment divided the parties’ property, awarded alimony to the wife, declined to award the husband child support, and awarded the wife an attorney fee. The wife cross-appeals the award of custody to the husband. As to the husband’s appeal, we affirm in part and reverse in part; as to the wife’s cross-appeal, we affirm.
 

 Procedural History
 

 On November 9, 2006, the wife filed a petition for a divorce from the husband. The husband answered and counterclaimed for a divorce. On December 22, 2006, the district court judge for Choctaw County entered an order in the divorce action that, among other things, awarded the parties joint temporary custody of the parties’ child. After a trial, the trial court entered a judgment on August 2, 2007, stating, in pertinent part:
 

 “This Court is hesitant, if not reluctant to change, alter or amend a prior custody Order or agreement. This Court finds as did the lower Court that it is in the best interest of the minor child that joint custody remain in effect with the [husband] designated as the primary custodian and with whom the child shall reside. This Court encourages and promotes, absent mitigating circumstances as much access to a minor children) with the non-primary custodial parent as possible.
 

 [[Image here]]
 

 “The [husband] is awarded the marital home and real estate upon which same is situated and shall pay any and/or all indebtedness thereon when due and shall hold the [wife] harmless therefrom and will indemnify the [wife] against any costs or expenses which may be associated with the [husband]’s failure to comply herewith, should that occur.
 

 “The [husband] is awarded the four-wheeler and shall pay any and/or all indebtedness thereon.
 

 “The [wife] is awarded the list of things she requested including the following:
 

 “A box of pictures.
 

 “A copy of pictures on the computer.
 

 “The digital camera and photo printer.
 

 “[The wife’s] father’s bed.
 

 
 *1146
 
 “[The wife’s] grandmother’s ornaments.
 

 “Brother’s scrapbook made by [the wife’s] grandmother.
 

 “[The wife’s] personal things from the home if any, that still remain therein.
 

 “The [wife] is awarded her Saab and the [husband] is Ordered to make payments thereon until the first lien is satisfied or paid in full. The [husband] shall be responsible for keeping and maintaining liability insurance on the automobile in at least the minimum amount required by law until the first lien is paid in full. Any additional coverage that the [wife] desires to obtain such as collision, etc., shall be the responsibility of the [wife],
 

 “The [husband] shall be responsible for all indebtedness related to his business. The [husband] is Ordered to reimburse the [wife] $2,500.00 in attorney’s fees.
 

 “The [husband] is Ordered to pay to the [wife] the sum of $400.00 per month for five (5) years as periodic alimony, which said alimony is intended by this Court not to be taxed by [wife] or deducted by the [husband]. The alimony payments shall cease in the event of death, re-marriage, or continuous overnight cohabitation with a member of the opposite sex, who is not related to the [wife] within the fifth (5th) degree.
 

 “The [wife] is not employed and has no income and has not completed her education and is not required to make a child-support payment at this time. Should the [wife] become employed, then she is Ordered to immediately notify the Circuit Court Clerk in order that a child support obligation can be computed, and which she is hereby Ordered to begin paying at that time.”
 

 On August 10, 2007, the wife filed a motion to alter, amend, or vacate the judgment or, in the alternative, for a new trial. The court denied that motion on that same day. The husband filed his notice of appeal on August 29, 2007. The wife filed her cross-appeal on September 17, 2007.
 

 Facts
 

 The parties married on April 25, 2000, and they separated on October 29, 2006. One child was born of the marriage, a son, whose date of birth is August 16, 2000. The wife was 26 years old at the time of the trial.
 

 The parties own a home that is located two houses down from the husband’s mother’s home. The wife estimated the value of the marital residence to be $86,000; the monthly payment on the residence are $166. The wife drives a Saab automobile, and the husband drives a truck. Both vehicles have associated debt. The outstanding loan on the Saab had a balance of $14,800 at the time of the trial. The husband also has a loan associated with his landscaping business. The parties also own a four-wheeled vehicle (“the four-wheeler”) that has associated debt.
 

 The wife testified that she stopped attending college when she became pregnant with the child. She testified that, after the parties separated, she attended college for one semester and that she intended to start college again in the fall.
 

 The husband testified that he earns between $1,800 and $2,000 a month. The wife is not employed. She testified that she had not been employed since 2003 when she worked at “Movie World.” The wife testified that the husband had made her quit work; the husband, however, denied that he had made her quit but stated that he had instead given her the option of staying home with the child. The wife testified that she had looked “everywhere” for a job; she testified regarding specific jobs that she had either applied for or
 
 *1147
 
 inquired about. She had not yet found work at the time of the trial. The husband also testified that the wife had not met the qualifications for one of the jobs that she had applied for. The husband testified that he had found the wife a job but that she would not take it. He also testified that the wife had a license to be a substitute teacher. He testified that the wife had agreed to pay the debt associated with the four-wheeler by substitute teaching.
 

 The wife testified that the husband had verbally abused her. The husband denied those allegations. The wife also testified that, during the parties’ separation, the husband had followed her around, had pulled her out of an automobile, had stolen her money, and had stolen her cellular telephone. She also testified that he had followed her to a restaurant and caused “a scene” and had confronted her male friend. She also testified that the husband had harassed a woman at a business where the wife had sought employment. The husband denied harassing that woman. The husband testified that, before the separation, the wife had begun losing her temper quickly and would scream at him and the child.
 

 The wife testified that, when she moved out of the marital residence, she took $2,500 out of the parties’ credit-union account to pay her attorney. The husband, however, testified that the wife had taken $5,963 out of the credit-union account, causing checks to “bounce” and the electricity to the marital home to be shut off. He testified that she gave him $1,300 of that money back.
 

 Discussion
 

 On appeal, the husband argues (1) that the trial court erred in deviating from the guidelines of Buie 32, Ala. B. Jud. Admin., in awarding child support, (2) that the trial court exceeded its discretion in its division of property and its award of alimony, and (3) that the trial court exceeded its discretion in requiring the husband to pay the wife’s attorney fee. On cross-appeal, the wife argues (1) that the trial court erred by denying her motion for a new trial without a hearing; (2) that the trial court exceeded its discretion by giving “undue inference” to the temporary-custody order and by applying the incorrect standard of review; and (3) that this court should remand the case for a new trial because of the trial judge’s posttrial suspension from the bench.
 

 Appeal
 

 I.
 

 We first address the husband’s argument that the trial court exceeded its discretion in failing to impute income to the wife. “[T]he determination that a parent is voluntarily unemployed or underemployed ‘is to be made from the facts presented according to the judicial discretion of the trial court.’ ”
 
 Clements v. Clements,
 
 990 So.2d 383, 394 (Ala.Civ.App.2007) (quoting
 
 Winfrey v. Winfrey,
 
 602 So.2d 904, 905 (Ala.Civ.App.1992)). “If the court finds that either parent is voluntarily unemployed or underemployed, it shall estimate the income that parent would otherwise have and shall impute to that parent that income; the court shall calculate child support based on that parent’s imputed income.” Buie 32(B)(5), Ala. B. Jud. Admin. In the present case, the wife had not been employed outside the home during the majority of the parties’ marriage. Since the parties separated, the wife had gone back to college and had attempted to rejoin the workforce. She testified that she had looked “everywhere” for a job. She also testified regarding specific jobs that she had either applied for or inquired about, but she had not yet found work. The husband testified that the wife had not met the qualifications for one of the jobs that she had applied for. Based on the
 
 *1148
 
 foregoing evidence, we find that the trial court could have concluded that the wife was not “voluntarily” unemployed but, instead, was making a good-faith effort to rejoin the workforce.
 

 We next address the husband’s argument that the trial court failed to apply the standards set forth in Rule 32, Ala. R. Jud. Admin. Specifically, the husband argues that the trial court erred in deviating from the child-support guidelines and by not making a written finding as to why the application of the child-support guidelines would be unjust.
 
 See
 
 Rule 32(A), Ala. R. Jud. Admin. In the present case, however, it appears that the trial court did not deviate from the guidelines. The wife had no income; thus, her percentage of responsibility for the child-support obligation, pursuant to Rule 32, would be 0.
 
 See
 
 Rule 32(C)(2), Ala. R. Jud. Admin. Further, even if the trial court had deviated from the guidelines, the trial court clearly explained the reason — that the wife is unemployed, has no income, and has not completed her education.
 
 See Knight v. Norris,
 
 607 So.2d 274, 276 (Ala.Civ.App.1992) (holding that trial court may deviate from Rule 32 guidelines if it explains reasons why application of guidelines would be manifestly unjust or inequitable). Accordingly,
 
 we
 
 find no error on this point.
 

 The husband’s final argument on the issue of child support is that the trial erred by failing to require the parties to submit Form CS-M1 income affidavits. While this court has reversed child-support awards in such situations, “we have also determined that, when the record otherwise establishes the parties’ respective incomes, we need not reverse the child-support award for such a technicality.”
 
 Knight v. Knight,
 
 [Ms. 2060801, April 4, 2008] — So.3d -, - (Ala.Civ.App. 2008). In the present case, the husband testified that his monthly income was between $1,800 and $2,000; the wife testified that she had no income. Accordingly, we need not reverse the trial court’s judgment for failure to require the parties to submit Form CS-41 income affidavits.
 
 See Dunn v. Dunn,
 
 891 So.2d 891, 896 (Ala.Civ.App.2004).
 

 II.
 

 With regard to the division of property and the award of alimony, the husband argues that the trial court failed to consider all the factors that a trial court should consider in making such a determination. He also argues that the trial court’s division of property and its award of alimony were inequitable.
 

 “[M]atters of alimony and property division rest soundly within the trial court’s discretion, and rulings on those matters will not be disturbed on appeal except for a plain and palpable abuse of discretion.
 
 Welch v. Welch,
 
 636 So.2d 464 (Ala.Civ.App.1994). Matters of alimony and property division are interrelated, and the entire judgment must be considered in determining whether the trial court abused its discretion as to either of those issues.
 
 Willing v. Willing,
 
 655 So.2d 1064 (Ala.Civ.App.1995).”
 

 Henderson v. Henderson,
 
 800 So.2d 595, 597 (Ala.Civ.App.2000).
 

 “ ‘ “[W]here the evidence has been [presented] ore tenus, a presumption of correctness attends the trial court’s conclusion on issues of fact, and this Court will not disturb the trial court’s conclusion unless it is clearly erroneous and against the great weight of the evidence, but will affirm the judgment if, under any reasonable aspect, it is supported by credible evidence.” ’ ”
 

 Yeager v. Lucy,
 
 998 So.2d 460, 463 (Ala.2008) (quoting
 
 Reed v. Board of Trs. for Alabama State Univ.,
 
 778 So.2d 791, 795
 
 *1149
 
 (Ala.2000), quoting in turn
 
 Raidt v. Crane,
 
 342 So.2d 358, 360 (Ala.1977)). “[W]e note that there is no rigid standard or mathematical formula on which a trial court must base its determination of alimony and the division of marital assets.”
 
 Yohey v. Yohey,
 
 890 So.2d 160, 164 (Ala.Civ.App.2004).
 

 “Factors the trial court should consider in its award of alimony and its division of property include the earning abilities of the parties; the future prospects of the parties; their ages and health; the duration of the marriage; their station in life; the marital properties and their sources, values and types; and the conduct of the parties in relation to the marriage.
 
 [Willing v. Willing,
 
 655 So.2d] at 1067 [ (Ala.Civ.App.1995) ]. Further, a division of marital property in a divorce case does not have to be equal, only equitable, and a determination of what is equitable rests within the sound discretion of the trial court.”
 

 Henderson,
 
 800 So.2d at 597.
 

 The husband testified that he earned between $1,800 and $2,000 monthly from his landscaping business. The wife, however, was unemployed and had been so during the majority of the parties’ marriage. Since the parties’ separation, the wife had resumed her college education. The wife was 26 years old at the time of the trial; there was no testimony as to the age of the husband. The parties had been married for seven years. The parties’ major marital assets were the marital home, the Saab automobile, the truck, the four-wheeler, and the landscaping business. The husband was awarded all these items except the Saab automobile. All the items had associated debt. The evidence was in dispute concerning the fault of the parties. The wife testified that the husband had verbally and physically abused her; the husband denied those allegations. He instead testified that the wife had begun losing her temper easily with him and the child.
 

 In its final judgment, the trial court ordered the husband to pay all the marital debt. The husband was also ordered to pay for liability insurance on the Saab automobile awarded to the wife until the first lien on the automobile is paid in full. In addition, the trial court ordered the husband to pay the wife alimony in the amount of $400 per month for five years. In reaching its determination, the trial court noted the entirety of the evidence before it. From a review of the evidence adduced at the trial, as well as the contents of the trial court’s judgment, we cannot conclude that the trial court failed to consider the relevant factors in its division of property and its award of alimony.
 

 As to whether the judgment was inequitable, we acknowledge that the trial court did award the wife some marital assets but no marital liabilities. However, the record contains no valuation evidence as to the automobile, the truck, the business, or the parties’ personal property. Further, the only evidence regarding the amount of husband’s expenses is that his alimony payments are $400 and the mortgage payment is $166. There is no evidence as to the amount of the monthly payments for the automobile, the truck, the motor-vehicle liability insurance, the business loan, or the payment on the four-wheeler. Without that information, it is impossible for us to determine whether those payments consume the husband’s monthly income and financially cripple him, as he argues. “A party who complains of error by the trial court must affirmatively show from the record on appeal that such error was in fact committed.”
 
 Walnut Equip. Leasing Co. v. Graham,
 
 532 So.2d 655, 655 (Ala.Civ.App.1988).
 

 
 *1150
 
 Considering all the factors the trial court must take into account when dividing property and awarding alimony, especially considering that the husband was awarded the bulk of the marital property, we cannot say that the trial court exceeded its discretion in its division of property and its award of alimony.
 

 III.
 

 The husband next argues that the trial court should not have ordered him to reimburse the wife $2,500 in attorney fees because the wife testified that she had already taken money out of the parties’ credit union account to pay $2,500 to her attorney.
 

 “Whether to award an attorney fee in a domestic relations case is within the sound discretion of the trial court and, absent an abuse of that discretion, its ruling on that question will not be reversed.
 
 Thompson v. Thompson,
 
 650 So.2d 928 (Ala.Civ.App.1994). ‘Factors to be considered by the trial court when awarding such fees include the financial circumstances of the parties, the parties’ conduct, the results of the litigation, and, where appropriate, the trial court’s knowledge and experience as to the value of the services performed by the attorney.’
 
 Figures v. Figures,
 
 624 So.2d 188, 191 (Ala.Civ.App.1993). Additionally, a trial court is presumed to have knowledge from which it may set a reasonable attorney fee even when there is no evidence as to the reasonableness of the attorney fee.
 
 Taylor v. Taylor,
 
 486 So.2d 1294 (Ala.Civ.App.1986).”
 

 Glover v. Glover,
 
 678 So.2d 174, 176 (Ala.Civ.App.1996).
 

 In the present case, the language of the judgment requiring the husband to “reimburse” the wife $2,500 in attorney fees indicates that the trial court was referring to the $2,500 that the wife testified she had already paid her attorney. There was no finding that any additional fees were due and no evidence presented to justify such a finding. Because the wife had paid the $2,500 fee out of the parties’ joint credit-union account, it appears that the husband had already paid at least a portion of the $2,500 fee. Accordingly, it was error for the trial court to order the husband to pay the entire fee again. Therefore, we reverse the trial court’s judgment on this issue and remand this cause for further proceedings so that the trial court can determine what portion of the attorney fee the husband has already paid.
 

 Cross-Appeal
 

 I.
 

 On cross-appeal, the wife first argues that the trial court erred in failing to hold a hearing on her postjudgment motion before denying it. However, as the husband points out, the wife failed to request a hearing on her motion.
 

 “Rule 59(g), Ala. R. Civ. P., provides that post-judgment motions ‘shall not be ruled upon until the parties have had an opportunity to be heard thereon.’ ... [I]f a hearing is requested, it must be granted.”
 
 Geisenhoff v. Geisenhoff,
 
 693 So.2d 489, 492 (Ala.CivApp.1997);
 
 In re Weaver,
 
 451 So.2d 350, 352 (Ala.Civ.App. 1984). However, if a party fails to request a hearing on his or her postjudgment motion, failure to hold a hearing is not error.
 
 Geisenhoff,
 
 693 So.2d at 492;
 
 Weaver,
 
 451 So.2d at 352 (“In the absence of a request for a hearing on the motion for rehearing, the trial court was not in error in ruling on the motion without a hearing.”). Based on the foregoing, we cannot hold the trial court in error on this point.
 

 II.
 

 With regard to child custody, the wife first argues that the trial court erred
 
 *1151
 
 by giving undue deference to the district judge’s temporary-custody order. In the divorce judgment, the trial court, referring to the December 22, 2006, order, stated that it was “hesitant, if not reluctant to change, alter or amend a prior custody Order or agreement.” The trial court, however, did not simply defer to the temporary order as the wife argues. Instead, it conducted a final hearing at which it heard the testimony of the parties and their witnesses and made its own independent finding that it was in the best interests of the child to be in the primary physical custody of the husband. Accordingly, we cannot say that the trial court improperly deferred to the temporary-custody order.
 

 The wife also argues that the court improperly applied the
 
 McLendon
 
 standard in determining custody of the child.
 
 See Ex parte McLendon,
 
 455 So.2d 863 (Ala.1984).
 
 [1]
 
 We find that the temporary-custody order was in the nature of a pendente lite order because it was “ ‘effective only during the pendency of the litigation ... and [was] ... replaced by the entry of a final judgment’ ” at the end of the litigation.
 
 Evans v. Evans,
 
 978 So.2d 42, 48 (Ala.Civ.App.2007) (quoting
 
 T.J.H. v. S.N.F.,
 
 960 So.2d 669, 672 (Ala.Civ.App.2006)).
 
 See also Hodge v. Steinwinder,
 
 919 So.2d 1179, 1182 (Ala.Civ.App.2005). “A pendente lite order awarding custody to a parent does not create a presumption in favor of the party who is awarded pen-dente lite custody.”
 
 T.J.H. v. S.N.F.,
 
 960 So.2d at 673. “The best interest of the child” is the standard applicable in cases, such as the present case, in which a trial court is making an initial determination of custody.
 
 Steed v. Steed,
 
 877 So.2d 602, 606 (Ala.Civ.App.2003).
 

 Although the trial court stated that it was “hesitant, if not reluctant,” to change the pendente lite order, nothing in the judgment indicated that the trial court applied the
 
 McLendon
 
 standard. The trial court did not require the wife to prove a material change of circumstances since the entry of the pendente lite order or to prove that the transfer of custody from the husband to her would materially promote the child’s best interests and substantially outweigh the inherently disruptive effect of uprooting the child, as would be required under
 
 McLendon.
 
 Instead, the trial court based its custody determination on
 
 *1152
 
 its finding “that it is in the best interest of the minor child that joint custody remain in effect with the [husband] designated as the primary custodian and with whom the child shall reside.” Accordingly, we conclude that the trial court applied the correct standard in determining custody of the parties’ child.
 

 Ill
 

 The wife’s final argument— that this court should remand the case for a new trial due to the trial judge’s admission in proceedings before the Court of Judicial Inquiry that he was working under a diminished capacity during his judgeship — was raised for the first time on appeal. An appellate court cannot consider arguments raised for the first time on appeal.
 
 Andrews v. Merritt Oil Co.,
 
 612 So.2d 409, 410 (Ala.1992). We note, however, that nothing in this opinion prevents the wife from filing an appropriate motion with the trial court to set aside the judgment based on the above-stated grounds.
 

 Conclusion
 

 Based on the foregoing, we affirm the judgment in all respects, except that portion of the judgment regarding the award of attorney fees, which we reverse. The cause is remanded for further proceedings consistent with this opinion.
 

 APPEAL — AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
 

 CROSS-APPEAL — AFFIRMED.
 

 THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ., concur.
 

 [1]
 

 . In
 
 Ex parte McLendon,
 
 the supreme court set out the standard to be applied in custody-modification cases:
 

 " 'Where a parent has transferred to another [whether it be a non-parent or the other parent], the custody of h[er] infant child by fair agreement, which has been acted upon by such other person to the manifest interest and welfare of the child, the parent will not be permitted to reclaim the custody of the child, unless [s]he can show that a change of the custody will materially promote h[er] , child’s welfare.’
 

 “Greene v. Greene,
 
 249 Ala. 155, 157, 30 So.2d 444, 445 (1947), quoting the Supreme Court of Virginia,
 
 Stringfellow v. Somerville,
 
 95 Va. 701, 29 S.E. 685, 687, 40 L.R.A. 623 (1898).
 

 "Furthermore,
 

 " '[This] is a rule of repose, allowing the child, whose welfare is paramount, the valuable benefit of stability and the right to put down into its environment those roots necessary for the child’s healthy growth into adolescence and adulthood. The doctrine requires that the party seeking modification prove to the court’s satisfaction that material changes affecting the child's welfare since the most recent decree demonstrate that custody should be disturbed to promote the child’s best interests. The positive good brought about by the modification must more than offset the inherently disruptive effect caused by uprooting the child. Frequent disruptions are to be condemned.’
 

 “Wood v. Wood,
 
 333 So.2d 826, 828 (Ala.Civ.App.1976).”
 

 455 So.2d at 865-66.