16 So.3d 810 (2009)
J.M.
v.
C.M.
2071223.
Court of Civil Appeals of Alabama.
February 13, 2009.
Thomas H. Claunch III of Harding & Claunch, LLC, Montgomery, for appellant.
Larry E. Darby of Darby Law Firm, LLC, Montgomery, for appellee.
Debora E. Palmer of Clenney & Palmer, LLC, guardian ad litem.
THOMAS, Judge.
J.M. ("the father") and C.M. ("the mother") are the parents of T.A.M. In 2007, the father was ordered to pay $225 per month in child support. In February 2008, the father filed a petition seeking to have the Montgomery Juvenile Court award him joint legal custody of the child and to set a specific visitation schedule. In June 2008, the juvenile court awarded the mother temporary legal custody of the child. In *811 August 2008, the mother filed a cross-petition, seeking full custody of the child. The juvenile court "consolidated" the custody petitions with an existing child-support case numbered 2007-251 ("the child-support case"); no filings related to the child-support case appear in the record. After a trial, at which neither parent was represented by an attorney, the juvenile court entered a judgment awarding the mother custody of the child, awarding the father specific visitation rights, and "reinstating" the $225 child-support order from case number 2007-251. The father timely appealed, asserting that the juvenile court erred by "reinstating" his child-support obligation.
At trial, the father testified that the court that had initially presided over the child-support case had "taken [him] off" child support because he and the mother had testified in that court that they were sharing custody of the child. The father also told the juvenile court that he and the mother had been before the court that had initially presided over the child-support case twice. In regard to the father's claim that he kept the child two weeks out of the month, the mother commented: "That was last year." The mother never testified that the father's child-support obligation was $225 per month. That information was supplied by the child's guardian ad litem at the start of the trial.
The father argues that the juvenile court erred when it awarded child support without complying with Rule 32, Ala. R. Jud. Admin.[1] The father specifically complains that there is no documentation supporting the $225 child-support obligation the juvenile court ordered because there are no child-support-guideline forms in the record, as required by Rule 32(E).[2] This court will reverse a child-support judgment when the record fails to contain the forms required by Rule 32(E). Wilkerson v. Waldrop, 895 So.2d 347, 349 (Ala.Civ.App.2004); M.S.H. v. C.A.H., 829 So.2d 164 (Ala.Civ.App.2002); and Martin v. Martin, 637 So.2d 901 (Ala.Civ.App. 1994).
The mother and the child's guardian ad litem, who has filed a brief in this court, argue that the juvenile court was not required to apply Rule 32 or to take any evidence on the child-support issue because it merely "reinstated" the original child-support obligation set by the court that had initially presided over the child-support case. They base their argument in support of the juvenile court's judgment on Rhea v. Rhea, 360 So.2d 1029 (Ala.Civ. App.1978), a case that predates the adoption of the child-support guidelines by several years.
In Rhea, this court considered an appeal by a father who complained that the trial court had improperly reinstated his child-support payments. Rhea, 360 So.2d at 1029. The original divorce judgment, which was entered in 1974, had set the father's alimony and child-support payments at $400 per month. Id. In 1976, the *812 trial court reduced the father's child-support obligation to $200 per month. Id. The mother then filed a motion to modify the father's child-support obligation; a hearing on that motion occurred in May 1977. Id. After determining the amount of the arrearage owed by the father, the trial court continued that hearing because the father was not present. Id. At the next hearing, which was held in August 1977, the father was again absent. Id. at 1030. The trial court determined that the mother's motion to modify "was to be continued generally and to be reset for review during February, 1978, and every six months thereafter until a final determination of the cause was made," and it further ordered that the father pay, on a temporary basis, $100 per month in child support and $150 per month toward the established child-support arrearage. Id. In February 1978, the trial court, after a hearing at which the father was again absent, ordered that the father resume paying $200 per month in child support. Id. The father appealed, arguing that the trial court had lacked an evidentiary basis to modify his child-support obligation. Id.
This court affirmed the trial court's judgment. Id. The following language appears in this court's opinion:
"It is clear to this court that the nature of the court's order of February, 1978, was more of a reinstatement of a prior decree than a modification. When the [mother] filed her motion to modify, the [father] was paying $200 per month for child support. This was later raised on a temporary basis to $250 in August, 1977. The court's order of February, 1978, the subject of this appeal, reinstated the support payments in the amount of $200. This was the same amount the court had previously ordered the [father] to pay prior to the [mother's] motion to modify and the instigation of the above proceedings. The court, in this instance, was merely exercising its continuing power over the parties, basing its order on evidence previously taken."
Id.
The mother and the guardian ad litem argue that, based on Rhea, the juvenile court had the authority to "reinstate" the child-support obligation set by the judgment previously entered by the court that had initially presided over the child-support case. We disagree with this interpretation of Rhea. A close reading of Rhea indicates that the trial court's "reinstatement" of the father's child-support obligation was an order returning the parties to the status quo ante  or to the trial court's own most recent modification judgment after a pendente lite adjustment to the father's child-support obligation. The pendente lite adjustment in the father's child-support obligation was not a final judgment reducing the father's child-support obligation. Instead, the pendente lite order, like any pendente lite order, was a interlocutory order entered pending the completion of the litigation. Evans v. Evans, 978 So.2d 42, 48 (Ala.Civ.App.2007) (quoting T.J.H. v. S.N.F., 960 So.2d 669, 672 (Ala.Civ.App.2006)) (explaining that "`[a] pendente lite custody order is an order that is effective only during the pendency of the litigation in an existing case and is usually replaced by the entry of a final judgment'"); Murphree v. Murphree, 579 So.2d 634, 637 (Ala.Civ.App.1991) (stating that "alimony pendente lite is purely interlocutory in nature"). Because in Rhea the reduction in child support was interlocutory in nature, the trial court could amend the pendente lite order at any time. Rheams v. Rheams, 378 So.2d 1125, 1128 (Ala.Civ.App.1979) ("An interlocutory *813 judgment is subject to modification at any time before final judgment."). Thus, the trial court's decision in Rhea to return the father's child-support obligation to the original amount at the conclusion of the litigation was simply a return to the status quo ante and not a new judgment modifying the father's child-support obligation.
Based on the testimony at trial in the present case, the father and the mother had been sharing custody "last year," or in 2007. The father testified that he had been "taken off" child support because of the parties' shared-custody arrangement. When the father questioned how the juvenile court could order him to pay child support when the court that had initially presided over the child-support case had relieved him of the obligation, the juvenile court stated that its order "trumped" the order of the court that had initially presided over the child-support case.
We fail to see how the juvenile court could "reinstate" a prior order of the court that had initially presided over the child-support case, which set the father's child-support obligation at $225 per month, when that court had, based on the undisputed testimony at trial, modified that award in a later modification proceeding. The most recent child-support judgment, according to the parties, reflected that the parties shared custody of the child and that the father was not required to pay child support to the mother. The juvenile court's judgment modified that existing child-support order without taking testimony on the parties' respective incomes and without having either party complete a child-support income affidavit or a CS-42 child-support form. Thus, we must reverse the juvenile court's judgment insofar as it orders the father to pay $225 per month in child support, and we remand this cause for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
THOMPSON, P.J., and PITTMAN, BRYAN, and MOORE, JJ., concur.
NOTES
[1] The father appended several pleadings and judgments from the court that had initially presided over the child-support case to his brief. We have not considered those items because "[t]he record on appeal cannot be supplemented or enlarged by the attachment of an appendix to an appellant's brief." Goree v. Shirley, 765 So.2d 661, 662 (Ala.Civ. App.2000).
[2] Rule 32(E) states that "[a] standardized Child-Support Guidelines form (Form CS-42 as appended to this rule) and a Child-Support-Obligation Income Statement/Affidavit form (Form CS-41 as appended to this rule) shall be filed in each action to establish or modify child-support obligations and shall be of record and shall be deemed to be incorporated by reference in the court's child-support order."