Medical Assurance Company, Inc. ("Medical Assurance"), appeals from the order of the Montgomery Circuit Court granting the motion for a summary judgment filed by Johnnie Timmons, as administratrix of the estate of Brandi Timmons, deceased ("Timmons"), one of the defendants in the declaratory-judgment action filed by Medical Assurance. In that same order, the trial court denied the cross-motion for a summary judgment filed by Medical Assurance. The other defendants in the declaratory-judgment action were Anesthesiology Pain Medicine of Montgomery, P.C., ("the P.C."), Dr. William Ware, D.O., and Lil Hayes, a certified registered nurse anesthetist. Medical Assurance filed the declaratory-judgment action after a $13.7 million judgment was entered against the P.C., Dr. Ware, and Nurse Hayes in a medical-malpractice action brought by Timmons. (The P.C., Dr. Ware, and Nurse Hayes will sometimes be referred to collectively as "the defendants" both with respect to the medical-malpractice action and the declaratory-judgment action.)
On May 5, 2006, a majority of this Court reversed the $13.7 million judgment in the medical-malpractice action "in its entirety and remand[ed] the case for a new trial." Ware v.Timmons, 954 So.2d 545, 561 (Ala. 2006). On September 22, 2006, we over-ruled the application for rehearing and modified the opinion.
At all times pertinent to the medical-malpractice action, Medical Assurance had in effect its "medical professional liability policy" issued to the P.C. as the policy-holder and "insured organization" and listing Dr. Ware and three other physicians as the "insured physicians" and Nurse Hayes and four other certified registered nurse anesthetists as the "insured paramedical employees."
In the interval between the entry of the judgment in the medical-malpractice case and the reversal of that judgment by this Court, Medical Assurance filed its declaratory-judgment action seeking a declaration of the construction and application of the following feature of its policy, in light of the fact that the judgment was entered as to all defendants, without indicating the amount of each defendant's liability:
 "MEDICAL PROFESSIONAL LIABILITY POLICY INSURED ORGANIZATION SHARED LIMIT ENDORSEMENT
 "This endorsement amends the Professional Liability Coverage Part of the policy. *Page 461 
 "In consideration of the fact that the insured organization has been included as an insured at no premium charge, the insured organization shall not have its own limit of liability, but shall share in the limits of liability of the insured physicians. Any damages paid on behalf of the insured organization (whether by reason of a claim or suit against (1) the insured organization, (2) any other covered employee, or (3) any insured physician on account of liability arising by reason of his status as a member, partner, officer, director or shareholder of the insured organization) shall be applied against the limits of liability applicable to the insured physicians, in such order and manner as we deem appropriate.
 "If damages are awarded, or a settlement is made with our consent, against the insured organization and one or more insured physicians, the total limit of liability available to the insured organization and such insured physicians
shall not exceed the limit of liability then available under the policy to such insured physicians. If damages are awarded, or a settlement is made with our consent, against the insured organization, but not against any insured physicians, the limit of liability available to the insured organization shall equal the average of the limits of liability then available under the policy to all insured physicians."
(Hereinafter the "shared limit endorsement")
The policy afforded coverage to each of the insured physicians in the amount of $1 million for "each medical incident" and afforded coverage to each of the insured paramedical employees in the amount of $100,000 for each such incident.
Medical Assurance contended in the declaratory-judgment action that its coverage obligation for the $13.7 million judgment was $1.1 million, representing the $1 million coverage available to Dr. Ware, and shared in by the P.C., and the $100,000 coverage available to Nurse Hayes. Timmons argued that the total amount of Medical Assurance's coverage for the judgment was actually $4.1 million, because the judgment was against the insured organization and an insured physician, and the limit of liability available to the P.C. for that type of damages award was the limit of liability coverage available under the policy to "the insured physicians," and because there were four physicians insured the coverage for the physicians aggregated $4 million.
In its order entering the summary judgment in favor of Timmons and denying Medical Assurance's motion for a summary judgment, the trial court held that the shared limit endorsement was at least ambiguous as between those two constructions but was due to be construed against Medical Assurance and the amount of coverage available to the P.C. for the judgment was $4 million. Thus, the trial court held, the total obligation of Medical Assurance for the judgment was $4.1 million.
Because that judgment has now been reversed and the case remanded for a new trial, however, the declaratory-judgment action has become moot; consequently, this appeal must be dismissed. Our reasoning in that regard is as follows: Upon a retrial, the jury will render one of eight possible verdicts (assuming it reaches a verdict), as follows:
 1. A verdict for all three defendants;
 2. A verdict against all three defendants;
 3. A verdict against the P.C. and Dr. Ware;
 4. A verdict against the P.C. and Nurse Hayes;
 5. A verdict against only the P.C.; *Page 462 
 6. A verdict against Dr. Ware and Nurse Hayes;
 7. A verdict against only Dr. Ware; or
 8. A verdict against only Nurse Hayes.
The amount of the verdict may be $1 million or less, the amount of coverage undisputably available to the P.C. if the verdict is against only it or against it and Nurse Hayes (in which latter event another $100,000 in coverage would be available to be applied against the judgment).
Under verdict scenarios 1 and 4 through 8, there would be no issue as to the amount of coverage available under the policy. Only if damages are awarded against both the P.C. and Dr. Ware, as possible under verdict scenarios 2 and 3, would the coverage dispute presented by the declaratory-judgment action resurface.
 "The Declaratory Judgment Act, §§ 6-6-220 through -232, Ala. Code 1975, `does not" `empower courts to . . . give advisory opinions, however convenient it might be to have these questions decided for the government of future cases.'"' Bruner v. Geneva County Forestry Dep't, 865 So.2d 1167, 1175 (Ala. 2003) (quoting Stamps v. Jefferson County Bd. of Educ., 642 So.2d 941, 944 (Ala. 1994) (quoting in turn Town of Warrior v. Blaylock, 275 Ala. 113, 114, 152 So.2d 661, 662
(1963))) (emphasis added in Stamps). This Court has emphasized that declaratory-judgment actions must `settle a "bona fide justiciable controversy."' Baldwin County v. Bay Minette, 854 So.2d 42, 45 (Ala. 2003) (quoting Gulf South Conference v. Boyd, 369 So.2d 553, 557 (Ala. 1979)). The controversy must be `"definite and concrete,"' must be `"real and substantial,"' and must seek relief by asserting a claim opposed to the interest of another party `"upon a state of facts which must have accrued."' Baldwin County, 854 So.2d at 45 (quoting Copeland v. Jefferson County, 284 Ala. 558, 561, 226 So.2d 385, 387
(1969)). `"Declaratory judgment proceedings will not lie for an 'anticipated controversy.'"' Creola Land Dev., Inc. v. Bentbrooke Housing, L.L.C, 828 So.2d 285, 288 (Ala. 2002) (quoting City of Dothan v. Eighty-Four West, Inc., 738 So.2d 903, 908 (Ala.Civ.App. 1999)). Thus, if a declaratory judgment would not terminate any uncertainty or controversy, the court should not enter such a judgment. Bruner, 865 So.2d at 1175.
 "`"[J]usticiability is jurisdictional," Ex parte State ex rel. James, 711 So.2d [952,] 960 n. 2 (Ala. 1998); hence, if necessary, "this Court is duty bound to notice ex mero motu the absence of subject matter jurisdiction."' Baldwin County, 854 So.2d at 45 (quoting Stamps, 642 So.2d at 945 n. 2)."
Bedsole v. Goodloe, 912 So.2d 508, 518 (Ala. 2005).
 "A justiciable controversy is a prerequisite to this Court's subject-matter jurisdiction. Ex parte James, 836 So.2d 813, 825 (Ala. 2002). A case is justiciable when the party `"has been injured in fact."' Kid's Care, Inc. v. Alabama Dep't of Human Res., 843 So.2d 164, 166 (Ala. 2002) (quoting State v. 2018 Rainbow Drive, 740 So.2d 1025, 1027 (Ala. 1999)). Moreover, a justiciable controversy requires the parties to seek remedies from having sustained damage as opposed to seeking advice from the Court. Siegelman v. Alabama, Ass'n of Sch. Bds., 819 So.2d 568, 576 (Ala. 2001). See also State ex rel. Baxley v. Johnson, 293 Ala. 69, 75, 300 So.2d 106, 111 (1974)."
Birmingham Bd. of Educ. v. Boyd, 877 So.2d 592, 594-95
(Ala. 2003).
 "A number of principles applicable to this dispute were articulated long ago: *Page 463 
 "The necessary requisite to appellate jurisdiction is the existence of an actual controversy; therefore it is not within the province of this court to decide abstract or hypothetical questions, which are disconnected from the gravity of actual relief. . . .
 "`The general rule is, if pending an appeal, an event occurs which renders it impossible for the appellate court to grant any relief, the appeal may be dismissed. There are many instances in which such condition may arise. . . . The condition may also arise from the act of the court a quo, that is to say, from some order or judgment in the case pending the appeal, which is made by the court, which renders the determination of the questions presented by the appeal unnecessary. Paris Electric Light[ Ry.] Co. v. Martin (Tex.Civ.App.) 31 S.W. 243; 2 Cent. Dig. Appeal and Error, § 71 et seq.'"
Siegelman v. Alabama Ass'n of Sch. Bds., 819 So.2d 568,575-76 (Ala. 2001) (quoting Caldwell v. Loveless,17 Ala.App. 381, 382, 85 So. 307, 307-08 (1920)) (emphasis added inSiegelman).
 "`The general rule is that if, pending an appeal, an event occurs that makes determination of the case unnecessary, the appeal will be dismissed. . . .' In re Involuntary Commitment of Skelton, 777 So.2d 148, 149 (Ala.Civ.App. 2000). . . . See State ex rel. Eagerton v. Corwin, 359 So.2d 767, 769 (Ala. 1977) ('A case is moot when there is no real controversy and it seeks to determine an abstract question which does not rest on existing facts or rights.')."
Haley v. Barbour County, 885 So.2d 783, 787-88
(Ala. 2004). See also Morris v. Laster, 821 So.2d 923,925 (Ala. 2001) (reversing a judgment against the insured and dismissing as moot the separate appeal by the insured's liability-insurance carrier relating to its coverage obligations).
The intervening event of the reversal of the judgment in the medical-malpractice action has thus rendered moot the issue of the uncertainty about the amount of coverage that might be available to the P.C. in the event damages are awarded against it on retrial. Uncertainty in that regard will arise again only if one of two of the eight possible verdict scenarios occurs. Thus, the issue presently represents only a hypothetical or abstract question — only an anticipated controversy. The reversal of the previously entered judgment involving the P.C. renders unnecessary a determination of the amount of coverage that might be available from Medical Assurance to the P.C. in the event a verdict exceeding $1 million is returned against both it and Dr. Ware, however convenient it might be for the parties to have that question answered in advance of that eventuality. As we explained in Universal UnderwritersInsurance Co. v. East Central Alabama Ford-Mercury, Inc.,574 So.2d 716, 723 (Ala. 1990), and Mutual Assurance, Inc. v.Chancey, 781 So.2d 172, 175 (Ala. 2000), Medical Assurance will not be barred from litigating any coverage issue that might arise with respect to a verdict rendered on retrial, after the resolution of the underlying claims against its insureds.
Accordingly, this appeal is dismissed.
APPEAL DISMISSED.
SEE, LYONS, WOODALL, STUART, SMITH, BOLIN, and PARKER, JJ., concur.
 NABERS, C.J., recuses himself. *Page 464