THOMPSON, Presiding Judge.
Tina Lang (“the mother”) appeals from a judgment modifying custody of the parties’ three children. The mother had been awarded primary physical custody of the children when she and Michael Lang (“the father”) divorced in December 2004. In the judgment at issue, the trial court awarded custody of the two younger children to the father; it awarded custody of the oldest child to the children’s maternal grandparents. The children were 16, nine, and six years old at the time of trial. The youngest child is a boy; the older two children are girls.
The record indicates the following. In August 2006, the father filed a petition seeking to hold the mother in contempt for staying overnight with a member of the opposite sex while the children were present, in contravention of the divorce judgment. The father also requested custody of the parties’ three children. The mother then filed a motion seeking to hold the father in contempt for his failure to pay child support and for his failure to exercise visitation with all the children. The mother asserted that the father visited with only one child and took only one child for summer vacation. The mother and the father settled their differences at that time, and the trial court incorporated then-agreement into a judgment entered on August 23, 2006. In that judgment, the trial court also held the mother in contempt for her admitted violation of the cohabitation provision of the divorce judgment. In the August 23, 2006, judgment, the trial court also stated: “The parties have agreed that no future custody petitions shall be filed based on the co-habitation issue which is being resolved by this order.”
On March 26, 2007, the father filed another petition for a custody modification, alleging that the mother had violated the August 23, 2006, order enforcing the provision in the divorce judgment forbidding the mother to cohabitate. In his petition, the father sought custody of the parties’ middle child and asked that custody of the oldest and youngest children be awarded to the maternal grandparents. The same day — March 26, 2007 — the trial court entered an ex parte order awarding pendente lite custody of the middle child to the father and awarding pendente lite custody of the other two children to the maternal grandparents.
During the two years after the entry of the ex parte pendente lite order, the parties filed a number of petitions and motions regarding child support and visitation issues. Four judges have presided over this case. As pointed out by the trial judge who entered the judgment made the basis of this appeal, it appears from the record that the parties reached agreements on the issues raised in their various petitions before hearings could be held. Since the entry of the March 26, 2007, ex parte custody order, the custody arrangement set forth in that order remained in place. After providing time for the parents to submit to drug tests and for a psychologist to examine the children and after a number of continuances requested by the attorneys for both parties and by the guardian ad litem appointed to represent the children, a trial was held on the issue of “permanent” custody on July 30, 2009.
The evidence adduced at the July 30, 2009, trial tended to show the following. The father testified that he sought a custody modification because, at the time he filed the petition in 2007, the mother was spending the night with a man who was a user and manufacturer of methamphet *314 amine. The mother acknowledged that she had been in a relationship with the man, and she was aware he used and manufactured methamphetamine, but, she said, she did not use drugs or drink alcohol. The older children were upset over the mother’s relationship with the man, who was in jail at the time of the trial. The mother acknowledged that, while she was in that relationship, she had put her relationship with her boyfriend before the needs of her children. She said that, at the time, she did not believe that the relationship might cause her to lose custody of her children because, she said, she believed that the father was “trying to get back” at her. She also testified that, although she had continued the relationship after the trial court entered the ex parte pendente lite custody order on March 26, 2007, she never “stayed” with the man again. The mother testified that the relationship had ended more than a year before the 2009 trial.
At the time of the trial, the mother was engaged to a man she had known all of her life. She said that they had been dating for seven months. Her fiancé has a four-bedroom, two-bath house, large enough to accommodate all three children; she said that she did not want the children separated. At the time of the trial, the mother was living with the maternal grandparents. She said that she had moved in with them to be with her children, two of whom had been living with the maternal grandparents as a result of the 2007 ex parte order. The mother testified that she had a full-time job and could support all three children. She also said that she was back in school studying to earn a degree as a registered nurse.
The mother submitted to a drug test, the results of which were negative, but she did not submit to the hair-follicle test that the trial court requested. The mother testified that she could not afford the latter test but that she did submit to a urine drug test. The results of that test, included in the record, indicated that the mother was not using drugs of any kind.
The mother also did not take part in the psychologist’s examination of the children. She testified that she thought she was to make the children available for the psychologist, but she did not think that she was to be there. The order requiring the children to submit to the examinations states:
“[T]he court finds that it is in the best interest of the children that they be examined by a licensed psychologist or psychiatrist in order to determine them current emotional state; any underlying causes of distress; and to make recommendations to the court and the guardian ad litem concerning future handling of the children’s emotional needs.”
The father was ordered to pay the cost of the children’s sessions with the psychologist.
Similarly, the mother testified that she did not contact the guardian ad litem appointed on behalf of the children because, she said, she believed that the guardian ad litem was to contact the children. The mother said that she had not paid the guardian ad litem because, she said, she never received a bill.
The father was living with his father in the children’s paternal grandparents’ house at the time of trial. The father’s mother had died a month before the trial. The paternal grandparents’ house has three bedrooms: the paternal grandfather has one room, the father has one room, and the middle child has the last room. When the youngest child had visited with the father, he had slept with the father in his room or with the paternal grandparents in their room. The father testified that if he received custody of all three *315 children, he would have to “work out” sleeping arrangements. He speculated that they would make use of “air mattresses, couches, whatever.”
The father testified that he had requested custody of only one of the children because it was too difficult for him to drive the oldest and youngest children to school. The oldest child was in high school in Gordo, and, at the time the father filed his petition, the youngest child was in school in Reform. The father lived in Greene County, more than 30 miles away from the children’s schools. At the time of the trial, however, the middle child and the youngest child attended the same school. The father said that, in addition to seeing the youngest child every other weekend, he also sees the youngest child when he takes the middle child to school or picks her up from school. The father testified that he and the oldest child, a daughter, had a strained relationship. He seldom saw the oldest child, although he did speak with her on the telephone approximately once every two weeks.
The middle child was in the fourth grade at the time of the trial. By all accounts, she was a good student while in the father’s custody. When the middle child was in the first grade, she lived with the mother. The father called the middle child’s first-grade teacher to testify that, while in the first grade, that child had been inattentive, had frequently daydreamed, and had “seemed to be just in her own little world.” Both the mother and the father met with the teacher and were involved in helping to work with the child. The teacher also testified that she recalled “something about maybe the power was cut off’ when the middle child was living with the mother; however, the teacher could not remember specifically where the power had been turned off, saying: “I don’t know that it was [the middle child’s] mother’s apartment or house. It may have been someone else’s.” The teacher noted that three years had passed since the incident.
The father conceded that he had not made any child-support payments in the eight months preceding the trial. The father testified that he was self-employed and that his income fluctuated between $16,000 and $30,000 annually. Evidence introduced at trial indicated that the father’s monthly income was $1,500 and that the mother’s monthly income was $2,393.60.
A psychologist who had met with the two oldest children in 2008 testified that, at that time, both were emotionally healthy, well adjusted children. The psychologist said that the oldest child appeared to be angry with the mother for being in a relationship with a man. At the time the psychologist met with the children, the mother would still have been in the relationship with the man who allegedly used and manufactured methamphetamine, whom she was no longer seeing at the time of the trial. Likewise, the psychologist said, he thought the oldest child had distanced herself from the father. The psychologist’s report indicated that the oldest child thought that the father’s affair with a “close friend of the family” had caused her parents’ divorce.
On January 21, 2010, the trial court entered an order finding that the father was a fit parent and that the mother was “unfit” for a number of reasons, including that the man with whom the mother had previously been cohabitating was a methamphetamine user and manufacturer who was in prison at the time of the trial. The mother had admitted that she had continued to cohabitate with the man even after the August 2006 contempt order was entered, saying that, at the time, she put that relationship before the needs of her chil *316 dren. The trial court further noted that, at the time of the trial, the mother was not “ready to acknowledge that the relationship with [the man had] threatened her custody of the children.”
As further grounds that the mother was “unfit,” the trial court stated that the mother had failed to participate when the psychologist had examined the children; that she had not submitted to a hair-follicle drug test;[1] and that she had not contacted the children’s guardian ad litem although the guardian ad litem had sought her input.
Based upon its findings, the trial court awarded custody of the two younger children to the father and awarded custody of the oldest child to the maternal grandparents. The mother was awarded supervised visitation with the middle child and the youngest child and unsupervised visitation with the oldest child.
In addition to modifying custody, the trial court’s judgment also established child-support obligations, determined the father’s child-support arrearage, ordered the mother and the father to each pay half of the guardian ad litem’s fee, and denied all other relief the parties had requested. The mother appeals.
The mother contends that the trial court violated her right to due process when it entered the March 2007 ex parte custody order and an order extending the terms of that order, which was entered in April 2007. Both orders purported to make “temporary” custody awards. The ex parte “temporary” custody orders entered in this case were in the nature of pendente lite orders because they were “ ‘effective only during the pendency of the litigation ... and [were] ... replaced by the entry of a final judgment’ ” at the end of the litigation. Evans v. Evans, 978 So.2d 42, 48 (Ala.Civ.App.2007) (quoting T.J.H. v. S.N.F., 960 So.2d 669, 672 (Ala.Civ.App.2006)). The mother did not petition this court for a writ of mandamus to set aside the ex parte orders. See, e.g., Ex parte Russell, 911 So.2d 719 (Ala.Civ.App.2005) (this court issued a writ of mandamus ordering the trial court to vacate ex parte orders granting the father pendente lite custody and further ordering the trial court to hold an evidentiary hearing on the father’s motion for pendente lite custody). The litigation proceeded and, on July 30, 2009, a trial was held on the issue of custody modification. The mother fully participated in that trial, after which the trial court entered the judgment modifying custody. That judgment effectively replaced the ex parte custody orders.
“ ‘ “The general rule is, if pending an appeal, an event occurs which renders it impossible for the appellate court to grant any relief, the appeal may be dismissed. There are many instances in which such condition may arise.... The condition may ... arise from the act of the court a quo, that is to say, from some order or judgment in the case pending the appeal, which is made by the court, which renders the determination of the questions presented by the appeal unnecessary. Paris Electric Light [& Ry.] Co. v. Martin (Tex.Civ.App.[1895]) 31 S.W. 243; 2 Cent. Dig. Appeal and Error, § 71 et seq.” ’
“Siegelman v. Alabama Ass’n of Sch. Bds., 819 So.2d 568, 575-76 (Ala.2001) (quoting Caldwell v. Loveless, 17 Ala. *317 App. 381, 382, 85 So. 307, 307-08 (1920)) (emphasis added in Siegelman).”
Medical Assurance Co. v. Anesthesiology & Pain Med. of Montgomery, P.C., 957 So.2d 459, 463 (Ala.2006).
In this case, the intervening trial on the issue of custody modification and the judgment replacing the ex parte custody orders render moot any issue regarding the propriety of the ex parte orders. Accordingly, this court will not consider whether the trial court erred in entering the ex parte orders. See Auburn Med. Ctr., Inc. v. East Alabama Health Care Auth., 908 So.2d 243, 245-46 (Ala.Civ.App.2003) (holding that a court will not decide a legal issue that is irrelevant to the outcome of case).
The mother contends that the trial court applied the improper standard of review in modifying the custody award set forth in the parties’ 2004 divorce judgment. Specifically, the mother asserts, there is no indication in the record or in the judgment that the trial court applied the standard set forth in Ex parte McLendon, 455 So.2d 863 (Ala.1984).
The McLendon standard is as follows:
“A parent seeking to modify a custody judgment awarding primary physical custody to the other parent must meet the standard for modification of custody set forth in Ex parte McLendon [, 455 So.2d 863 (Ala.1984) ]. Under that standard, the parent seeking to modify custody of a child must demonstrate that there has been a material change in circumstances, that the proposed change in custody will materially promote the child’s best interests, and that the benefits of the change will more than offset the inherently disruptive effect caused by uprooting the child. Ex parte McLendon, supra.”
Adams v. Adams, 21 So.3d 1247, 1252 (Ala.Civ.App.2009). We further note that “[a] pendente lite order awarding custody to a parent does not create a presumption in favor of the party who is awarded pen-dente lite custody.” T.J.H. v. S.N.F., 960 So.2d at 673.
In its judgment, the trial court modified custody based upon its finding that the mother was “unfit.” A finding that a parent is unfit is required in cases in which a nonparent seeks custody of a child. See Ex parte Terry, 494 So.2d 628, 632 (Ala.1986). Such a finding is not required in a custody dispute between parents. See McLendon, supra.
In his 2006 petition seeking a custody modification, the father asserted that the mother was in violation of a provision of a previous court order prohibiting the mother from cohabitating with a member of the opposite sex. At trial, the father testified that the reason he filed the petition in 2006 was because, at the time, the mother was cohabitating with a man known to be using and manufacturing methamphetamine.
Furthermore, the maternal grandparents, who ultimately were awarded custody of the oldest child, made clear to the trial court at the outset of the July 30, 2009, trial that they were not seeking custody of the children. The maternal grandmother told the trial court that she “thought we were here to get custody between [the father] and [the mother]” and that they were in court to be witnesses for the mother and to support her. The maternal grandparents specifically stated that they were not parties in the case, and, the maternal grandmother said, “[w]e’re not here trying to petition custody.” In the judgment the trial court noted that, although the maternal grandparents had filed a “Petition for Ex Parte Relief and Modification of Final Decree” on August *318 28, 2008,[2] the court had clarified their status at the outset of the July 30, 2009, trial. The judgment reflected that the maternal grandparents had said that they were only witnesses at the trial and that the attorney who had filed the August 28, 2008, petition on behalf of the maternal grandparents had appeared at the beginning of the trial “to make clear that the [maternal grandparents] were not parties and [that] he did not represent them in this matter.”
Based upon the record, we conclude that this case involves a custody dispute between the father and the mother. Therefore, the McLendon standard was the correct standard to be applied in determining whether to modify custody. However, after a review of the judgment and the record, we find no indication that the trial court applied the McLendon standard. The trial court’s judgment modifying custody is based upon its finding that the mother is “unfit.”[3]
We recognize that the McLen-don standard is less stringent than the parental-unfitness standard. This court has held that when a judgment awarding a custody modification is entered based upon application of a more stringent standard than should have been applied, the judgment is due to be affirmed on the ground that the trial court’s error in applying the more stringent standard was harmless. Rehfeld v. Roth, 885 So.2d 791, 794 (Ala.Civ.App.2004), citing Lawley v. Byrd, 689 So.2d 191 (Ala.Civ.App.1997), and I.M. v. J.P.F., 668 So.2d 843 (Ala.Civ.App.1995). In this case, however, the mother also asserts that the evidence does not support the trial court’s judgment modifying custody on the basis that she was unfit. In fact, she argues, the evidence is insufficient to meet even the McLendon standard.
“ ‘When this Court reviews a trial court’s child-custody determination that was based upon evidence presented ore tenus, we presume the trial court’s decision is correct: “ ‘A custody determination of the trial court entered upon oral testimony is accorded a presumption of correctness on appeal, and we will not reverse unless the evidence so fails to support the determination that it is plainly and palpably wrong....’” Ex parte Perkins, 646 So.2d 46, 47 (Ala.1994), quoting Phillips v. Phillips, 622 So.2d 410, 412 (Ala.Civ.App.1993) (citations omitted). This presumption is based on the trial court’s unique position to directly observe the witnesses and to assess them demeanor and credibility. This opportunity to observe witnesses is especially important in child-custody cases. “In child custody cases especially, the perception of an attentive trial judge is of great importance.” Williams v. Williams, 402 So.2d 1029, 1032 (Ala.Civ.App.1981).’
“Ex parte Fann, 810 So.2d 631, 633 (Ala.2001).”
Ex parte Blackstock, 47 So.3d 801, 805 (Ala.2009). However, when a trial court improperly applies the law to the facts, the trial court’s judgment is not entitled to a presumption of correctness on appeal. Laminack v. Laminack, 675 So.2d 479, 481 (Ala.Civ.App.1996).
*319 The trial court’s grounds for finding the mother “unfit” were that, at one time, she had cohabitated with a drug user and manufacturer, that she had failed to submit to a hair-follicle drug test, that she had failed to participate in the children’s examinations by the psychologist, and that she had failed to contact the guardian ad litem.
In B.S.L. v. S.E., 875 So.2d 1215 (Ala.Civ.App.2003), as in this case, a relatively long time passed between the filing of the petition for a custody modification and the entry of the final judgment. In B.S.L., this court reversed a judgment modifying custody based on the mother’s history of drug and alcohol abuse when the mother had voluntarily sought treatment and had abstained from abusing drugs and alcohol for almost two years as of the date of trial. Id. at 1224.
In A.L. v. S.J., 827 So.2d 828 (Ala.Civ.App.2002), the father sought custody of the parties’ 13-month-old child, and the child’s paternal grandmother, who also sought custody of the child, moved to intervene. After a trial, the trial court awarded the mother and the father joint legal custody of the child but awarded primary physical custody of the child to the paternal grandmother. Id. at 830. Evidence in that case indicated that the 19-year-old mother, among other things, had dated D.W., a 17-year-old who admitted that he had used illegal drugs and had consumed alcohol in the past; he also acknowledged that he had overdosed on drugs in October 2000. At one point during the litigation regarding custody of the child, the trial court had ordered that the child not be allowed in D.W.’s presence and had awarded the mother temporary custody of the child on the condition that she avoid contact with D.W. However, the record in that case included evidence indicating that the mother had continued to see D.W. and that D.W. had even spent the night at the mother’s apartment in violation of the trial court’s order. There was no evidence, however, that the mother had placed the child in any situation that was harmful or dangerous. Id. at 832-33.
At the time of the trial in A.L., the mother was no longer dating D.W. This court reversed the judgment awarding primary physical custody of the child to the paternal grandmother, concluding that, although the evidence indicated that the mother had exhibited poor judgment, it fell short of establishing, by clear and convincing evidence, that the mother was an “ ‘ “unfit or improper person to be entrusted with the care and upbringing of the child.” ’ ” Id. at 834 (quoting Ex parte Terry, 494 So.2d at 632, quoting in turn Ex parte Mathews, 428 So.2d 58, 59 (Ala.1983)).
In this case, the mother’s relationship that the father testified was the basis for his request for a custody modification and that the trial court used as the primary basis for finding that the mother was “unfit” had ended more than a year before the trial of this case. At the time of the trial, the mother was engaged to a man she had known all of her life. There was no evidence indicating that the mother’s fiancé had engaged in improper or illegal conduct. There was no evidence indicating that the mother was using illegal drugs at the time of the trial. The mother’s fiancé had already purchased a house large enough to accommodate all three of the mother’s children. The mother held a full-time job and had returned to school to become a registered nurse. The psychologist who had examined the two older children found them both to be healthy and well adjusted. It is true that the older children were upset with the mother’s relationship at the root of this case; however, the psychologist also found that the older *320 child was upset with the father, too, because of her belief that his affair with a family friend had caused the breakup of the parties’ marriage.
As was the case with the mother in A.L., the evidence in this case indicated that the mother had exercised poor judgment in the past. At the time the father’s petition was filed, the mother’s circumstances may well have led one to conclude that she was unfit. However, like the mother in B.S.L., her circumstances at the time of the trial, which was held more than two years after the father filed his petition, had changed for the better. The mother provided explanations regarding the trial court’s concerns that the mother had failed to take a hair-follicle drug test, had failed to participate in the psychologist’s examination of the children, and had failed to contact the guardian ad litem. Even if the trial court did not accept the mother’s explanations, however, we conclude that the mother’s conduct did not make her an “ ‘unfit or improper person to be entrusted with the care and upbringing of the child’ ” as required by Ex parte Terry, 494 So.2d at 632.
After reviewing the record in this case, we conclude that there is insufficient evidence to support a finding that the mother was unfit, and, thus, the judgment finding the mother to be unfit is plainly and palpably wrong. Because there is insufficient evidence to support the finding that the mother was unfit, the trial court’s award of custody of the oldest child to the maternal grandparents, with whom the mother was living so she could be with the oldest and youngest child, was improper and must be reversed. See Ex parte Terry, 494 So.2d at 632. Our holding precludes the need to address the propriety of awarding custody of the oldest child to the maternal grandparents on the basis that they were not parties in this matter.
Furthermore, because the evidence does not support the trial court’s finding that the mother was unfit, we cannot say that application of the incorrect, albeit more stringent, standard of determining whether to modify custody constituted harmless error. There is nothing in the record or in the judgment to suggest that the trial court considered whether there had been a material change in circumstances, that the proposed change in custody would materially promote the children’s best interests, and that the benefit brought about by the modification more than offset the inherently disruptive effect caused by uprooting the children. Therefore, we also reverse the trial court’s judgment modifying custody of the two youngest children. We remand this cause for the trial court to consider the evidence in light of the McLendon standard to determine whether a change of custody of the parties’ children is warranted.
Because we reverse the judgment of the trial court as to the modification of custody of all three children, we pretermit discussion of the other issues the mother raises on appeal.
REVERSED AND REMANDED.
PITTMAN, BRYAN, and THOMAS, JJ., concur.
MOORE, J., concurs in part and dissents in part, with writing.

. The record includes the results of urine drug tests administered to the mother and the father. The results of both tests were negative for the presence of illegal drugs. There is no evidence in the record indicating that either the mother or the father submitted to a hair-follicle drug test.

. The “Petition for Ex Parte Relief and Modification of Final Decree’’ to which the trial court referred is not included in the record on appeal.

. We recognize that, in a custody dispute between a parent and a nonparent, to award custody to the nonparent a trial court must find, by clear and convincing evidence, that a parent is unfit. Thus, had the maternal grandparents been seeking custody of any of the children, to award custody to the maternal grandparents, the trial court would have had to find that the mother was unfit.