THOMPSON, Presiding Judge.
Tina Lang (“the mother”) appeals from a judgment, entered on remand, modifying custody of the parties’ three children. The mother had been awarded primary physical custody of the children when she and Michael Lang (“the father”) divorced in December 2004.
This is the second time the parties have appeared before this court on the issue of custody modification. See Lang v. Lang, 61 So.3d 311 (Ala.Civ.App.2010) (“Lang I ”). In Lang I, the trial court entered a judgment (“the 2010 judgment”) awarding custody of the two younger children to the father and, after finding that the mother was unfit, awarding custody of the oldest child to the children’s maternal grandparents. This court determined that the trial court’s finding that the mother was unfit was not supported by sufficient evidence. We also found that the trial court had applied the incorrect standard in modifying custody of the children. Accordingly, we reversed the 2010 judgment and remanded the cause for the trial court to consider whether custody modification was appropriate under the standard set forth in Ex parte McLendon, 455 So.2d 863 (Ala.1984).
On remand, the trial court considered the same evidence that had been presented at the July 30, 2009, trial, and it did not take any new evidence. We note that, at the time of the July 2009 trial, the children were 16, 9, and 6 years old; thus, they were nearly two years older at the time the trial court entered the judgment at issue in this appeal. The youngest child is a boy; the older two children are girls.
This court has explained the procedural history and the facts of this dispute as follows:
“The record indicates the following. In August 2006, the father filed a petition seeking to hold the mother in contempt for staying overnight with a member of the opposite sex while the children were present, in contravention of the divorce judgment. The father also requested custody of the parties’ three children. The mother then filed a motion seeking to hold the father in contempt for his failure to pay child support and for his failure to exercise visitation with all the children. The mother asserted that the father visited with only one child and took only one child for summer vacation. The mother and the father settled their differences at that time, and the trial court incorporated their agreement into a judgment entered on August 23, 2006. In that *1246 judgment, the trial court also held the mother in contempt for her admitted violation of the cohabitation provision of the divorce judgment. In the August 23, 2006, judgment, the trial court also stated: ‘The parties have agreed that no future custody petitions shall be filed based on the co-habitation issue which is being resolved by this order.’
“On March 26, 2007, the father filed another petition for a custody modification, alleging that the mother had violated the August 23, 2006, order enforcing the provision in the divorce judgment forbidding the mother to cohabitate. In his petition, the father sought custody of the parties’ middle child and asked that custody of the oldest and youngest children be awarded to the maternal grandparents. The same day — March 26, 2007 — the trial court entered an ex parte order awarding pendente lite custody of the middle child to the father and awarding pendente lite custody of the other two children to the maternal grandparents.
“During the two years after the entry of the ex parte pendente lite order, the parties filed a number of petitions and motions regarding child support and visitation issues. Four judges have presided over this case. As pointed out by the trial judge who entered the judgment made the basis of this appeal, it appears from the record that the parties reached agreements on the issues raised in their various petitions before hearings could be held. Since the entry of the March 26, 2007, ex parte custody order, the custody arrangement set forth in that order remained in place. After providing time for the parents to submit to drug tests and for a psychologist to examine the children and after a number of continuances requested by the attorneys for both parties and by the guardian ad litem appointed to represent the children, a trial was held on the issue of ‘permanent’ custody on July 30, ■ 2009.
“The evidence adduced at the July 30, 2009, trial tended to show the following. The father testified that he sought a custody modification because, at the time he filed the petition in 2007, the mother was spending the night with a man who was a user and manufacturer of methamphetamine. The mother acknowledged that she had been in a relationship with the man, and she was aware he used and manufactured methamphetamine, but, she said, she did not use drugs or drink alcohol. The older children were upset over the mother’s relationship with the man, who was in jail at the time of the trial. The mother acknowledged that, while she was in that relationship, she had put her relationship with her boyfriend before the needs of her children. She said that, at the time, she did not believe that the relationship might cause her to lose custody of her children because, she said, she believed that the father was ‘trying to get back’ at her. She also testified that, although she had continued the relationship after the trial court entered the ex parte pendente lite custody order on March 26, 2007, she never ‘stayed’ with the man again. The mother testified that the relationship had ended more than a year before the 2009 trial.
“At the time of the trial, the mother was engaged to a man she had known all of her life. She said that they had been dating for seven months. Her fiancé has a four-bedroom, two-bath house, large enough to accommodate all three children; she said that she did not want the children separated. At the time of the trial, the mother was living with the maternal grandparents. She said that she had moved in with them to be with her children, two of whom had been *1247 living with the maternal grandparents as a result of the 2007 ex parte order. The mother testified that she had a full-time job and could support all three children. She also said that she was back in school studying to earn a degree as a registered nurse.
“The mother submitted to a drug test, the results of which were negative, but she did not submit to the hair-follicle test that the trial court requested. The mother testified that she could not afford the latter test but that she did submit to a urine drug test. The results of that test, included in the record, indicated that the mother was not using drugs of any kind.
“The mother also did not take part in the psychologist’s examination of the children. She testified that she thought she was to make the children available for the psychologist, but she did not think that she was to be there. The order requiring the children to submit to the examinations states:
“ ‘[T]he court finds that it is in the best interest of the children that they be examined by a licensed psychologist or psychiatrist in order to determine their current emotional state; any underlying causes of distress; and to make recommendations to the court and the guardian ad litem concerning future handling of the children’s emotional needs.’
The father was ordered to pay the cost of the children’s sessions with the psychologist.
“Similarly, the mother testified that she did not contact the guardian ad li-tem appointed on behalf of the children because, she said, she believed that the guardian ad litem was to contact the children. The mother said that she had not paid the guardian ad litem because, she said, she never received a bill.
“The father was living with his father in the children’s paternal grandparents’ house at the time of trial. The father’s mother had died a month before the trial. The paternal grandparents’ house has three bedrooms: the paternal grandfather has one room, the father has one room, and the middle child has the last room. When the youngest child had visited with the father, he had slept with the father in his room or with the paternal grandparents in their room. The father testified that if he received custody of all three children, he would have to ‘work out’ sleeping arrangements. He speculated that they would make use of ‘air mattresses, couches, whatever.’
“The father testified that he had requested custody of only one of the children because it was too difficult for him to drive the oldest and youngest children to school. The oldest child was in high school in Gordo, and, at the time the father filed his petition, the youngest child was in school in Reform. The father lived in Greene County, more than 30 miles away from the children’s schools. At the time of the trial, however, the middle child and the youngest child attended the same school. The father said that, in addition to seeing the youngest child every other weekend, he also sees the youngest child when he takes the middle child to school or picks her up from school. The father testified that he and the oldest child, a daughter, had a strained relationship. He seldom saw the oldest child, although he did speak with her on the telephone approximately once every two weeks.
“The middle child was in the fourth grade at the time of the trial. By all accounts, she was a good student while in the father’s custody. When the middle child was in the first grade, she lived *1248 with the mother. The father called the middle child’s first-grade teacher to testify that, while in the first grade, that child had been inattentive, had frequently daydreamed, and had ‘seemed to be just in her own little world.’ Both the mother and the father met with the teacher and were involved in helping to work with the child. The teacher also testified that she recalled ‘something about maybe the power was cut off when the middle child was living with the mother; however, the teacher could not remember specifically where the power had been turned off, saying: T don’t know that it was [the middle child’s] mother’s apartment or house. It may have been someone else’s.’ The teacher noted that three years had passed since the incident.
“The father conceded that he had not made any child-support payments in the eight months preceding the trial. The father testified that he was self-employed and that his income fluctuated between $16,000 and $30,000 annually. Evidence introduced at trial indicated that the father’s monthly income was $1,500 and that the mother’s monthly income was $2,393.60.
“A psychologist who had met with the two oldest children in 2008 testified that, at that time, both were emotionally healthy, well adjusted children. The psychologist said that the oldest child appeared to be angry with the mother for being in a relationship with a man. At the time the psychologist met with the children, the mother would still have been in the relationship with the man who allegedly used and manufactured methamphetamine, whom she was no longer seeing at the time of the trial. Likewise, the psychologist said, he thought the oldest child had distanced herself from the father. The psychologist’s report indicated that the oldest child thought that the father’s affair with a ‘close friend of the family had caused her parents’ divorce.”
Lang I, 61 So.3d at 313-15.
On January 7, 2011, the trial court entered a judgment (“the 2011 judgment”) in which it again awarded the father custody of the two younger children. Despite our holdings in Lang I that the evidence was insufficient to support a finding that the mother was unfit and that a nonparent could not be awarded custody of the children in the absence of such a finding, see Lang I, 61 So.3d at 320, the trial court also awarded the maternal grandparents custody of the oldest child, who is finishing her senior year in high school. The mother appeals.
“When a trial court hears evidence presented ore tenus, makes findings of fact, and enters its judgment based upon such facts, we review that judgment with a presumption of correctness. We will not reverse except for an abuse of discretion or where the judgment is so unsupported by the evidence as to be plainly and palpably wrong. Matter of Young, 456 So.2d 823 (Ala.Civ.App.1984).”
Tallent v. Tallent, 630 So.2d 74, 75 (Ala.Civ.App.1993).
The mother contends that the evidence was insufficient to warrant a change of custody pursuant to Ex parte McLendon. The McLendon standard is as follows:
“A parent seeking to modify a custody judgment awarding primary physical custody to the other parent must meet the standard for modification of custody set forth in Ex parte McLendon [, 455 So.2d 863 (Ala.1984) ]. Under that standard, the parent seeking to modify custody of a child must demonstrate that there has been a material change in *1249 circumstances, that the proposed change in custody will materially promote the child’s best interests, and that the benefits of the change will more than offset the inherently disruptive effect caused by uprooting the child. Ex parte McLendon, supra.”
Adams v. Adams, 21 So.3d 1247, 1252 (Ala.Civ.App.2009).
We further note that “[a] pendente lite order awarding custody to a parent does not create a presumption in favor of the party who is awarded pendente lite custody.” T.J.H. v. S.N.F., 960 So.2d 669, 673 (Ala.Civ.App.2006).
In the 2011 judgment, the trial court found the following changes in circumstances:
“1. The mother was involved in a relationship with [the man who used and manufactured methamphetamine] which is now over. She acknowledged that during the relationship with [that man] that he manufactured and used methamphetamine. She denied using methamphetamine or being around others when they did. 2. The mother is now engaged to be married to [a man she has known all her life] which relationship appears to be wholesome.”
The trial court also stated that the mother had “character flaws,” adding that it did not believe the mother’s testimony that, during her earlier relationship, she had not used methamphetamine or that she had not been around others when they used it.
As she did in Lang I, the mother contends that the trial court based its finding of a material change in circumstances on outdated evidence and that her current circumstances no longer warrant a change in custody. In Lang I, this court agreed that the trial court had relied on facts that were no longer relevant when ordering the custody modification. Lang I, 61 So.3d at 319 (citing B.S.L. v. S.E., 875 So.2d 1215, 1224 (Ala.Civ.App.2003), in which this court reversed a judgment modifying custody based on the mother’s history of drug and alcohol abuse when the mother had voluntarily sought treatment and had abstained from abusing drugs and alcohol for almost two years as of the date of trial).
As we pointed out in Lang I, and as the trial court acknowledged in the 2011 judgment, the mother’s relationship that the father testified was the basis for his request for a custody modification and that the trial court used as the primary basis for finding a material change in circumstances, had ended more than a year before the trial of this case and approximately three years before the entry of the 2011 judgment. In Lang I, this court explained that,
“[a]t the time of the trial, the mother was engaged to a man she had known all of her life. There was no evidence indicating that the mother’s fiancé had engaged in improper or illegal conduct. There was no evidence indicating that the mother was using illegal drugs at the time of the trial. The mother’s flan-eé had already purchased a house large enough to accommodate all three of the mother’s children. The mother held a full-time job and had returned to school to become a registered nurse. The psychologist who had examined the two older children found them both to be healthy and well adjusted. It is true that the older children were upset with the mother’s relationship at the root of this case; however, the psychologist also found that the older child was upset with the father, too, because of her belief that his affair with a family friend had caused the breakup of the parties’ marriage.”
Lang I, 61 So.3d at 319-20. We also noted that, like the mother in B.S.L., the mother’s circumstances at the time of the trial had changed for the better. In fact, she is in a relationship that the trial court, in the *1250 2011 judgment, characterized as “wholesome.” Furthermore, there is no evidence in the record to indicate that the mother’s so-called “character flaws” affected the welfare of the children; thus, those “flaws” are insufficient to deprive the mother of custody. See A.L. v. S.J., 827 So.2d 828, 832-33 (Ala.Civ.App.2002), and Armstrong v. Armstrong, 515 So.2d 27, 28-29 (Ala.Civ.App.1987) (“Custody will not be modified because of evidence of indiscreet conduct, sexual or otherwise, by a custodial parent unless that conduct had a substantial detrimental effect upon the welfare of the child”).
In reviewing the totality of the record before us, we hold that the evidence is insufficient to support the trial court’s judgment modifying custody, awarding custody of the younger children to the father and custody of the oldest child to the maternal grandparents. Accordingly, the trial court’s judgment is reversed, and a judgment is rendered for the mother.
REVERSED AND JUDGMENT RENDERED.
PITTMAN, BRYAN, and THOMAS, JJ., concur.
MOORE, J., concurs in the result, without writing.