MOORE, Judge.
F.M. (“the maternal grandmother”) appeals from a judgment entered by the Autauga Juvenile Court (“the juvenile court”) transferring physical custody of I.R.B. (“the child”) from the maternal grandmother to the child’s father, B.S. (“the father”), and transferring legal custody of the child from the maternal grandmother to the father and the child’s mother, T.G. (“the mother”). We reverse.

Background

The proceedings giving rise to this appeal began when the father filed a “dependency complaint, custody affidavit, and petition” relating to the child in the juvenile court on June 24, 2013. In that pleading, the father alleged that the child was born out of wedlock on May 15, 2008; that he had “begged for a paternity test” but the mother had insisted that he had not fathered the child; that the mother and the maternal grandmother had “kept the ... child’s paternity from [the father]”; that the mother, due to her “profligate lifestyle,” had lost custody of the child to the maternal grandmother in proceedings of which the father did not receive' notice; that the maternal grandmother, when seeking public assistance, had identified the father, as well as other men, to the Chilton County Department of Human Resources as the possible father of the child; that the father had recently discovered that he was the father of the child; that the father wanted custody of the child; and that the father was a fit parent who could properly care for the child. The father asserted that the child was dependent due to the unfitness of the mother and the abandonment of the child by the mother.
On July 16, 2013, the maternal grandmother filed an answer. In her answer, the maternal grandmother denied that she had lied to the father about the paternity of the child; admitted that she had received custody by virtue of a 2012 dependency judgment, which was entered without notice to the father; admitted that she had utilized the Chilton County Department of Human Resources to determine the paternity of the child; and denied all the other allegations asserted by the father. The maternal grandmother also filed a motion to continue a hearing scheduled by the juvenile court in which she asserted that the State of Alabama had filed a child-support action against the father in the Chilton District Court; that the paternity of the child had been confirmed by genetic testing on April 10, 2013; that the maternal grandmother had voluntarily permitted the father to have contact and visit with the child since April 10, 2013; and that the parties were scheduling counseling for the benefit of the child.[1]
The juvenile court appointed a guardian ad litem for the child and scheduled a hearing for August 28, 2013. On that date, *666 the juvenile court discussed the case with the parties, their attorneys, the counselor for the child, and the guardian ad litem, but it did not take any testimony. The next day, the juvenile court entered a “pendente lite order,” finding the child dependent, awarding the father visitation, and scheduling a final hearing for September 11, 2013.
On September 9, 2013, the mother filed an answer and a counterclaim. In her answer, the mother denied all the allegations in the father’s pleading and asserted that he should be estopped from pursuing his claims due to unclean hands. In her counterclaim, the mother asserted that the father had been informed of his paternity but that he had denied the same; that the father was seeking custody solely to avoid paying child support; that the maternal grandmother had been awarded custody of the child on October 3, 2012; that the child was residing with the maternal grandmother; and that the mother was fit to care for the child and wanted custody returned to her.
The juvenile court conducted a status conference on September 11, 2013, at which the court heard from the child’s counselor, the guardian ad litem, and the attorneys for the mother and the father. On September 13, 2013, the juvenile court entered an order awarding the father specified visitation, requiring the mother’s visitation to be supervised, and instructing the parties to assure that the child attended counseling. The juvenile court also scheduled a final hearing for September 23, 2013. On September 19, 2013, the mother initiated a separate action for custody of the child, asserting the identical allegations she had asserted in her counterclaim. That action was consolidated with the father’s dependency action.
On September 23, 2013, the date set for the final hearing, the juvenile court announced that the parties had met for several hours and had reached a settlement of the case, pursuant to which the mother and the father would receive joint legal custody of the child, with the father having sole physical custody, and the mother would receive standard visitation. After discussing the various terms of the agreement, the juvenile court heard from the attorney for the maternal grandmother, who stated on the record:
“And then Your Honor for clarification and just for the record [the maternal grandmother] would like for Your Honor to know she is not in agreement with any of this. She does not believe it’s in [the child’s] interests.”
Thereafter, the attorneys for the mother and the father and the court discussed the issue of child support, after which the attorney for the maternal grandmother stated on the record:
“I’m not going to argue with you over the child support; but let’s get a couple of things clear. [The maternal grandmother] is not here asking for custody. She’s had custody. Utilizing [Temporary Aid for Needy Families] does make her an improper person. Just keep her out of this. She is not in agreement to this. This is y’all. Just leave her out of this.”
On September 25, 2013, the juvenile court entered a judgment “based on Agreement of the Parties,” in which the court awarded the mother and the father joint legal custody of the child with the father receiving sole physical custody, subject to the scheduled visitation rights of the mother. On October 8, 2013, the maternal grandmother filed a motion to alter, amend, or vacate the judgment. In that postjudgment motion, the maternal grandmother argued that she had been appointed legal custodian of the child by virtue of an earlier judgment; that the child had *667 been found dependent without any eviden-tiary basis; that, as she had informed the juvenile court through her attorney, she had not agreed to surrender custody of the child to the parents; and that the juvenile court had erroneously modified custody of the child without her agreement and without applying the law as set out in Ex parte McLendon, 455 So.2d 863 (Ala.1984).
Also on October 8, 2013, the maternal grandmother filed a notice of appeal; however, pursuant to Rule 4(a)(5), Ala. R.App. P., that notice was held in abeyance pending • the disposition of the postjudgment motions. The parties argued the maternal grandmother’s postjudgment motion, as well as a postjudgment filed by the mother on October 8, 2013, before the juvenile court on November 20, 2013. On December 2, 2013, the juvenile court purported to address the postjudgment motions filed by the maternal grandmother and the mother; however, those motions had been deemed denied by operation of law on October 22, 2013. See Rule 1(A) and (B), Ala. R. Juv. P. The maternal grandmother’s notice of appeal, therefore, became effective on 'that date.[2] Rule 4(a)(5), Ala. R.App. P.

Issues

On appeal, the maternal grandmother asserts the following issues:
“I. Whether the [juvenile] court erred in finding the minor child dependent without conducting an evidentiary hearing or [without receiving] clear and convincing evidence?
“II. Whether the [juvenile] court erred by removing sole custody from the maternal grandmother and vesting custody with the natural parents based upon an agreement between the natural parents without the maternal grandmother’s consent and agreement to same?
“III. Whether the [juvenile] court erred by basing its custody determination on an improper custody-modification standard by failing to require the natural parents [to] meet the McLendon standard to modify custody?”

Standard of Review

All the issues raised by the maternal grandmother concern questions of law. “[B]ecause this appeal concerns only questions of law, there is no presumption of correctness in favor of the trial court’s judgment; this court’s review of legal issues is de novo.” Morgan Bldg. & Spas, Inc. v. Gillett, 762 So.2d 366, 368 (Ala.Civ.App.2000).

Analysis

Based on reasonable inferences from the record, it appears that the juvenile court awarded “permanent” legal and physical custody of the child to the maternal grandmother in October 2012, as a means to ending the dependency of the child.[3] As a general rule, “[o]nce a juvenile court has placed a dependent child into the ‘permanent’ custody of a proper caregiver, the dependency of the child ends and any further change of custody is *668 governed by the standards set forth in Ex parte McLendon, 455 So.2d 863 (Ala.1984).” B.C. v. A.A., 143 So.3d 198, 205 (Ala.Civ.App.2013). However, as an exception to that rule, if, after the entry of that judgment, circumstances arise that again render the child dependent while in the care of the new custodian, a court may, based on the new dependency of the child, transfer custody of the child based on the best interests of the child. See T.D.I. v. A.P., 153 So.3d 807, 812 (Ala.Civ.App.2013) (“[A] juvenile court, after a dependent child has been placed into the ‘permanent’ custody of a proper caregiver, is [not] precluded from making a subsequent determination of dependency and award of custody if, upon proper petition of a party, that party satisfies its burden of proving that the circumstances surrounding a child have again rendered that child dependent and that it would be in the best interest of the child to award custody to the petitioner.”).
In this case, the juvenile court did not transfer custody of the child under either theory. The juvenile court originally found the child dependent in its penden-te lite order, but, in its final judgment, it did not premise its custody award on the dependency of the child. Instead, the juvenile court stated in the final judgment that it was transferring custody pursuant to its “continuing jurisdiction” over the case. Alabama Code 1975, § 12-15-117(a), gives juvenile courts continuing jurisdiction over custody disputes involving a minor child formerly found dependent. That continuing jurisdiction authorizes a juvenile court to transfer custody of a formerly dependent child without making a new finding of dependency. See, e.g., J.W. v. C.B., 68 So.3d 878, 880 (Ala.Civ.App.2011).
The juvenile court’s entry of the final judgment superseded the pendente lite order, which was interlocutory in nature, rendering any issues concerning the propriety of the pendente lite order moot. See Lang v. Lang, 61 So.3d 311, 317 (Ala.Civ.App.2010) (citing Auburn Med. Ctr., Inc. v. East Alabama Health Care Auth., 908 So.2d 243, 245-46 (Ala.Civ.App.2003)) (refusing to address the propriety .of a pendente lite order because it had been superseded by the entry of a final judgment and recognizing that a court will not decide a legal issue that is irrelevant to the outcome of the case). Hence, we do not address the alleged error in adjudicating the dependency of the child without the benefit of an evidentiary hearing or the presentation of clear and convincing evidence.
The juvenile court, however, also did not apply the McLendon standard. In order to modify custody of a formerly dependent child under Ex parte McLendon, a court has to find that the interests of the child would be materially promoted such that the benefits of the change of custody will more than offset the inherently disruptive effects from the transfer of custody. See 455 So.2d at 865-66. Presumably, the parties to the custody dispute may stipulate that the McLendon standard would be met so as to obviate a need for a trial, see, e.g., Ashley v. Ashley, 692 So.2d 853 (Ala.Civ.App.1997); and Wilson v. Wilson, 408 So.2d 114 (Ala.Civ.App.1981), but, in the absence of such a stipulation, the court may transfer custody of a child only under Ex parte McLendon based on evidence in the record adduced through a hearing in accordance with due process. See C.D.S. v. K.S.S., 978 So.2d 782 (Ala.Civ.App.2007).
In this case, the juvenile court accepted an agreement between the mother and the father as a sufficient basis for transferring custody of the child. This court has not uncovered any legal authority that authorizes a juvenile court to involuntarily transfer custody of a nondependent child from a *669 legal custodian based on the agreement of the parents of the child, particularly when one of those parents has previously been determined to be unfit to care for the child. When the attorneys for the mother and the father informed the juvenile court of the terms of their agreement, the maternal grandmother twice notified the juvenile court that she was not a party to that agreement and that she did not believe that the agreement served the best interests of the child. Without the agreement of the maternal grandmother, the legal and physical custodian of the child, the juvenile court could not transfer custody of the child to the parents based solely on the parents’ agreement. By allowing the mother and the father to agree to a custody modification over the objection of the maternal grandmother, the juvenile court, in essence, unlawfully delegated the duty of determining the custody of the child to the parents. See generally M.R.J. v. D.R.B., 84 So.3d 1287 (Ala.Civ.App.2009) (reversing as an improper delegation of judicial authority a trial court’s visitation judgment in which the mother’s visitation was at the sole discretion of the child’s guardian ad litem).
In this case, the father requested that he be awarded custody of the child. The maternal grandmother, the legal and physical custodian of the child, disputed the right of the father to custody of the child. The father asserts that he moved the juvenile court for a judgment on the pleadings,[4] but no such motion appears in the record, and the juvenile court did not refer to any such motion in its judgment, much less grant that motion. In its final judgment, the juvenile court expressed only one basis for its decision to transfer custody of the child — the agreement of the mother and the father. As the maternal grandmother argues, the juvenile court did not act in accordance with the law in relying on that agreement to divest the maternal grandmother of custody of the child.

Conclusion

Because the juvenile court improperly transferred custody of the child based on an agreement to whieh the maternal grandmother did not consent, its judgment is due to be reversed and the cause remanded for further proceedings consistent with this opinion.
The father’s July 24, 2014, request for an award of attorney’s fees is denied.
REVERSED AND REMANDED.
THOMPSON, P.J., and PITTMAN, THOMAS, and DONALDSON, JJ., concur.

. The patties did not introduce into the record any orders or judgments from the child-support action. Hence, we do not know whether any judgment was entered awarding the maternal grandmother child support, which judgment would constitute a constructive custody determination subject to later modification. See R.W. v. D.S., 85 So.3d 1005 (Ala.Civ.App.2011).

. The mother also filed a notice of appeal on October 22, 2013. On November 19, 2014, the mother filed a motion to dismiss her appeal; that motion was granted by this court on November 21, 2014.

. The record provided to this court on appeal does not include any pleadings, orders, or judgments from the 2012 dependency action; however, the father’s attorney read into the record portions of the record from the 2012 dependency action. The maternal grandmother has attached to her appellate brief copies of pleadings, orders, and the judgment entered in the 2012 dependency action, but we cannot consider matters outside the record. See J.B. v. Cleburne Cnty. Dep't of Human Res., 992 So.2d 34, 40 (Ala.Civ.App.2008).

. Although it is not clear from the record, the father apparently argued that, because he was not served in the 2012 dependency action, the 2012 dependency judgment was void and the maternal grandmother had no claim to custody based on that judgment. The juvenile court never ruled on that point of law, so we do not express any opinion as to its correctness.